AMELIA RUSSELL, Respondent, *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.

1. INSURANCE, LIFE — RESTRICTION OF POWER OF AGENTS. A life insurance company may enter into a contract with an applicant for insurance which can so fix the precise conditions under which the policy shall issue that agents, general or local, in the absence of express authority, cannot waive them.

2. WHEN PROVISION IN APPLICATION FOR INSURANCE THAT POLICY SHALL NOT TAKE EFFECT UNTIL FIRST PREMIUM BE PAID THEREON IN FULL CHARGES APPLICANT WITH NOTICE THAT AGENTS WITHOUT EXPRESS AUTHORITY HAVE NO POWER TO WAIVE IT. Where a written application for a policy of life insurance, duly signed by the applicant, provides that the application is to become a part of the contract of insurance applied for; that the policy to be issued thereunder shall be accepted subject to the conditions and agreements therein contained; that the policy "shall not take effect until the same shall be issued and delivered by the said company and the first premium paid thereon in full," which provision is carried into the policy with due reference to the same, the applicant must be presumed, in the absence of fraud, to have read or had read to him the application before signing it, and he is thereby advised that the policy cannot issue or take effect until the first premium is paid thereon in full; the legal effect is that he covenants directly with the company, not through its agent, that the policy is not to be binding until the first premium is paid in full, and he is chargeable with notice that the agent, whether general or local, cannot, without express authority, waive such payment and deliver a valid policy.

3. SAME. Where it appears in an action brought upon such policy by the beneficiary named therein that, at the time the policy was delivered to the insured, a general agent of the company extended the time of payment of the premium for thirty days from such delivery, stating that the

insurance would go into immediate effect, and the insured died four days thereafter, and before the premium was paid, the beneficiary cannot recover without proof of the agent's express authority to waive the payment of the first premium.

*Russell* v. *Prudential Ins. Co.,* 73 App. Div. 617, reversed.

(Argued June 11, 1903; decided October 6, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 26, 1902, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D. Raymond Cobb* for appellant.    The court erred in denying defendant's motion for a nonsuit.    (1 May on Ins. § 144; *Allen* v. *G. A. Ins. Co.,* 123 N. Y. 6; *Quinlan* v. *P. W. Ins. Co.,* 133 N. Y. 356; *Walsh* v. *H. Ins. Co.,* 73 N. Y. 11; *Moore* v. *N. Y. B. F. Ins. Co.,* 130 N. Y. 543; *Forward* v. *C. Ins. Co.,* 142 N. Y. 382; *Conway* v. *P. L. & M. Ins. Co.,* 140 N. Y. 83; *Wilkis* v. *S. Ins. Co.,* 43 Minn. 177; *Dunham* v. *Morse,* 158 Mass. 132; *Marvin* v. *U. Ins. Co.,* 85 N. Y. 278; *Bishop* v. *A. Ins. Co.,* 130 N. Y. 496.)    The court erred in holding with the plaintiff as a matter of law upon the question of Mr. Tennant's authority, of waiver, and estoppel, and in refusing to submit these questions to the jury. (*Gibson El. Co.* v. *L. & L. & G. Ins. Co.,* 159 N. Y. 426; *Stewart* v. *U. M. L. Ins. Co.,* 155 N. Y. 257; *Williams* v. *P. F. Ins. Co.,* 57 N. Y. 274; *Cornish* v. *F. B. F. Ins. Co.,* 74 N. Y. 295.)    The court erred in its refusals to charge. (*Clark* v. *Aldrich,* 4 App. Div. 527.)

*Frederick A. Kuntzsch* for respondent.    The general agent of the defendant had authority to waive the condition of the policy requiring payment of the initial premium as a condition precedent to its taking effect.    (*Marshall* v. *C. T. M. A. Assn.,* 170 N. Y. 434; *Genung* v. *M. Ins. Co.,* 60 App. Div.

424; *Ames* v. *M. L. Ins. Co.*, 40 App. Div. 465; *Sheldon* v. *A. F. & M. Ins. Co.*, 26 N. Y. 460; *Boehen* v. *W. C. Ins. Co.*, 35 N. Y. 131; *Ruggles* v. *A. C. Ins. Co.*, 114 N. Y. 415; *McNeilly* v. *C. L. Ins. Co.*, 66 N. Y. 23; *Marcus* v. *St. L. M. L. Ins. Co.*, 68 N. Y. 625; *Palmer* v. *P. M. L. Ins. Co.*, 84 N. Y. 63; 2 May on Ins. [4th ed.] § 360b; *Wood* v. *P. Ins. Co.*, 32 N. Y. 618.) Assuming that the general agent did not have express authority to waive the condition requiring payment of the initial premium, the defendant is, nevertheless, bound by his act. (*Babcock* v. *Baker*, 37 App. Div. 558; *Stewart* v. *U. M. L. Ins. Co.*, 155 N. Y. 257; *Pechner* v. *P. Ins. Co.*, 65 N. Y. 196; *Bodine* v. *E. F. Ins. Co.*, 51 N. Y. 117; *Cross* v. *S. T. & L. Ins. Co.*, 58 App. Div. 602; *Flaherty* v. *C. Ins. Co.*, 20 App. Div. 275; *Bliss* v. *A. Ins. Co.*, 18 App. Div. 481; *Miller* v. *L. Ins. Co.*, 12 Wall. 285.) The submission to the jury of the sole question, whether or not the defendant's agent, upon delivery of the policy gave credit for the first premium, was not error. (*Skinner* v. *Norman*, 165 N. Y. 565; *Genung* v. *M. Ins. Co.*, 60 App. Div. 424; *W. T. M. Co.* v. *H. E. Ins. Co.*, 66 N. Y. 613; *Goodwin* v. *M. M. L. Ins. Co.*, 73 N. Y. 480; *Robbins* v. *S. F. Ins. Co.*, 149 N. Y. 477; *Boehen* v. *W. C. Ins. Co.*, 35 N. Y. 134; *Forward* v. *C. Ins. Co.*, 142 N. Y. 382.) The exceptions to the rulings of the trial court are not well taken. (*Skinner* v. *Norman*, 165 N. Y. 565; *Pechner* v. *P. L. Ins. Co.*, 65 N. Y. 195.)

BARTLETT, J. The defendant is an insurance corporation organized in New Jersey, conducting two classes of insurance, one known as the "industrial" and the other "ordinary" insurance. Under the former plan small policies are issued upon which weekly payments are paid; under the latter larger policies are issued, the premiums being payable annually, semi-annually or quarterly.

The plaintiff sued to recover on a policy issued on the life of her deceased husband under the "ordinary" plan. The defendant was represented in this state by one Charles H.

Tennant as general agent at Syracuse. Tennant's district consisted of the counties of Onondaga, Oswego and Cortland.

It appears that at the time negotiations were opened for the policy sued on, the insured held a policy for a like amount in the defendant company, which was duly paid.

The complaint alleges that on the 30th day of December, 1899, the defendant issued the policy in suit; that on the 6th day of January, 1900, the defendant waived the payment of the first premium and extended same for a period of thirty days; that on the 10th day of January, four days thereafter, the insured was killed by an explosion.

The answer is a general denial, and also contained an affirmative defense to the effect that defendant had not insured the plaintiff's life, and that the policy alleged in the complaint never had an inception, the plaintiff not having paid the annual premium thereon, or complied with the preliminaries necessary to give it validity. The issues were tried at the Onondaga Trial Term and the jury rendered a verdict in favor of the plaintiff. The Appellate Division affirmed the judgment entered upon the verdict. No prevailing opinion was handed down, but Justice HISCOCK wrote a dissenting opinion, Justice WILLIAMS concurring.

The facts are as follows: On the 26th day of December, 1899, the plaintiff made a written application for the policy in suit. The material portions of that application read: " I hereby declare and warrant that all the statements and answers to the above questions, as well as those made or to be made to the company's medical examiner, are or shall be complete and true, and that they, together with this declaration, shall form the basis and become a part of the contract of insurance hereby applied for. And it is further agreed that the policy herein applied for shall be accepted subject to the conditions and agreements therein contained, and said policy shall not take effect until the same shall be issued and delivered by the said company and the first premium paid thereon in full," etc. This application was signed by the applicant and duly witnessed.

Upon receipt of the application the policy was sent to the general agent at Syracuse. On January 6th, 1900, the general agent, in company with a sub-agent, went to the house of the deceased and had an interview with him.

Plaintiff swears in substance that after her husband had stated his inability to pay the first premium at that time, the general agent informed him that he might have thirty days additional time in which to pay the first premium and that the insurance would go into immediate effect. The general agent and the sub-agent denied this conversation *in toto* and say that deceased was distinctly informed that the policy, as stated therein, would not go into effect until the first premium was paid in full. The receipt for the first premium was thereupon signed by the general agent and delivered to the insured and by him handed to the sub-agent, who was to hold it until the payment was actually made. This transaction as to the receipt is not disputed.

The policy contained the following, among other, provisions; it is headed, " Regarding agents." " No agent has power in behalf of the company to make or modify this or any contract of insurance, to extend time for paying the premium, to waive any forfeiture, or to bind the company by making any terms, or making or receiving any representation or information. These powers can be exercised only by the President, one of the Vice-presidents or the Secretary, and will not be delegated. Modifications, etc. No provision of this policy can be modified or waived in any case except by indorsement hereon signed by the President, one of the Vice-presidents or the Secretary."

The general agent was appointed to his position under a written contract, which is in evidence, and contains this provision, among others : " 4th. It is understood and agreed that said general agent has no authority on behalf of the Prudential Insurance Company of America, to make, alter or destroy any contract, to waive forfeitures, nor to receive any moneys due or to become due to said company, except on policies or renewal receipts signed by the President, Secretary

or Manager of the Ordinary Branch and sent to him for collection."

These facts constituted, substantially, the plaintiff's case, and the defendant thereupon moved for a nonsuit, on the ground that the plaintiff had failed to make out a cause of action. The court denied the motion. The defendant swore the general agent and sub-agent as witnesses, and each positively denied that the conversation testified to by plaintiff ever occurred between the general agent and the insured.

At the close of the evidence the defendant again moved for a nonsuit and for a directed verdict, specifying, among others, the ground that upon the plaintiff's own evidence, and upon the uncontradicted evidence in the case, the general agent had no authority to make or modify the contract of insurance as testified by plaintiff.

The learned trial judge, in denying this motion, said: "I deny the motion and give you an exception. The one question I am going to submit to the jury is this: whether on January 6th, 1900, Mr. Tennant, at the time he delivered the policy to Mr. Russell, agreed that the time for payment of the premium should be extended, as is claimed by plaintiff, and that the policy could, in the meantime, remain in force. That is the only question I am going to submit to the jury. If they find in favor of the plaintiff upon that state of facts the verdict will be for plaintiff. If they find for defendant upon that proposition the verdict will be for the defendant." To this limitation the defendant excepted.

The trial judge, in one of his rulings, said: "I hold as matter of law that if Mr. Tennant did what plaintiff claims he did on the 6th of January, then there can be a recovery in this case." To this ruling the defendant excepted.

The defendant contended that if there was any evidence that Tennant had apparent authority to put the policy in force and waive its express conditions, and any evidence of estoppel, the questions were for the jury, but the court adhered to its view that it was a question of law upon the contract of insurance.

The important question presented in this case, therefore, is, can an insurance company so draw the various papers constituting its contract of insurance as to prevent general and local agents from exercising powers to the detriment of the company, when the substantial provisions of that contract are brought home to the insured prior to the alleged delivery of the policy.

This case may be regarded as a test one on the point, as it is apparent that the contract of insurance now before the court is as strong in favor of the company as language can make it.

In considering the law of this case, we are met at the outset by the contention of the respondent that the case of *Stewart* v. *Union Mutual Life Ins. Co.* (155 N. Y. 257) is controlling. In that case it was held that the right of insurance companies to restrict their liabilities for acts of their agents, by inserting clauses in the application and policy restricting the powers of agents, must be recognized, unless by so doing their contracts would become tainted with fraud, and in such case it will be presumed that the waiver was intended rather than fraud. In that case it was distinctly held that to have decided it in favor of the company would have worked a fraud upon the insured under the undisputed facts.

The defendant in the case cited was a Maine corporation.

It is true that the application and policy were quite similar to the case at bar. The application provided that " it will constitute no contract of insurance until a policy shall have first been issued and delivered by the company and the first premium thereon paid during the life of the party proposed for insurance in the same condition of health as described in the application."

The policy provided that " All premiums are due at the office of the company in the City of Portland, Maine, at the date named in the policy, but at the pleasure of the company suitable persons may be authorized to receive such payments at other places, but only on the production of the company's receipt thereof, signed by the President, Secretary or Assist-

ant Secretary.   Any payments made to any person except in exchange for such receipt will not be recognized by the company, or be deemed by either party as a valid payment.   No agent, nor any other person, except the President, or Secretary, in writing has power to alter or change in any way the terms of this contract, or to waive forfeiture."

One Crane was the manager of the defendant's business in the state of New York.   The precise powers of the manager do not appear, and we are, therefore, not advised whether he was clothed with more ample authority than the general agent in the case at bar.   The policy was issued on the 19th day of April, 1890, on the life of the plaintiff's husband. The manager delivered the policy to the insured, taking a note for $123.10, being the amount of the first year's premium, which note became due and payable on May 31st, 1890. On August 9th, 1890, a check for the amount of this note, which had been given by the insured to the manager in response to a letter from the cashier of the company, dated four or five days before the note fell due, calling the insured's attention to the due date, was deposited for collection, but returned by the bank marked, "not good."   The insured was notified of the non-payment of this check August 9th; on August 12th the insured notified the manager he was ill, but would arrange for the payment of the check the last of that week.   The insured died two days later.

We thus have the manager for the state of New York taking a note for the first year's premium, which was not paid at maturity, and accepting a check for the amount of the note, which was not paid on presentation two or three months after it was given.

It is thus rendered clear by inevitable inference that the home office in Maine must have been advised of this departure from the strict rule in regard to the payment of premium at the time the policy was issued and had ratified the action of its manager.   It cannot be fairly assumed that a policy taking effect the latter part of April had not been reported to the home office by the following August.

This view was evidently entertained by the court, as appears in Judge Haight's opinion, at the bottom of page 266, as follows: " There is still another theory upon which, we think, the plaintiff established a cause of action, at least sufficient to make it a question of fact for the jury. It is apparent that Crane represented to Stewart that he had an insurance and that Stewart supposed himself to be insured from the letters, expressions and acts to which we have referred. It is also apparent that the contract was that Stewart was to have credit. This may be clearly inferred from Crane's first letter. The rule is, that the knowledge of the agent is the knowledge of the principal, and it will be presumed that the company knew the terms of the contract entered into by its agent, and either waived the provisions of the policy for immediate payment of the premium, or held itself estopped from setting it up, for to hold otherwise would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument."

In the case at bar we have no such situation. The policy was delivered on the 6th day of January, and the insured was accidentally killed four days thereafter, so that there can be no presumption of ratification of the act of the general agent in delivering the policy without collecting the premium as required by the rules of the company. It follows that the case cited is distinguishable from the one at bar and offers no obstacle to our disposing of the latter on its peculiar facts.

In the case before us we have a contract that distinguishes it from a large number of cases which hold that the provision of the policy to the effect that only certain officers of the company can waive payment of premiums when due and that agents cannot do so, does not apply to the initial premium. This distinguishing feature is found in the fact that the application, which is made a part of the policy, contains the express condition that the policy shall not take effect until the same shall have been issued and delivered by the company and the first premium paid thereon in full.

In this connection it is to be observed that not only is the

application made a part of the policy by its terms, but the policy opens with this provision : " In consideration of the application for this policy, which is hereby made part of this contract, and of the quarterly annual premium of seven and 02-100 dollars, which it is agreed shall be paid to the company in exchange for its receipt on the delivery of this policy," etc.

The above quotation from the policy gives added significance to the. manner in which the receipt was treated at the interview between the agents and the insured, to which reference has already been made. The policy states that it is to be given in exchange for the receipt, and it rests upon the undisputed evidence that the receipt was left in the custody of the sub-agent, not to be surrendered until the first premium was paid.

In many of the cases cited, where insurance companies were held liable, the agent having waived the payment of the first premium contrary to the provisions of the policy and without authority from the company, the decision was based upon the fact that the policy had never been delivered to the insured, and, consequently, he could not be charged with notice of its contents at the time of the agent's waiver of payment.

It was argued that to hold otherwise would practically permit the company, through its agent, to work a fraud upon the insured by leading him to believe that he had secured insurance when such was not the fact.

We have been cited to a multitude of cases by the respondent which it is quite impossible to review in detail within the limits of an ordinary opinion. Many of these are within the class to which reference has already been made, in regard to waiving the payment of the initial premium, and others deal with waiver in various forms, such as resting on the general course of business with the insured ; knowledge of the agent before issuing the policy that property was subject to mortgage or other lien ; that the title was in a third person ; that there was other and undisclosed insurance, or various

conditions which would render the policy void, by its terms, if the company were not chargeable with the knowledge of its agent, by reason of information imparted to him by the insured during the preliminary negotiations.

In the case at bar there is no evidence of a course of business between the company and the insured, nor was it shown that the general agent had power to waive payment of the first premium. On the contrary, the plaintiff put in evidence the contract between the company and its general agent, which showed, affirmatively, that he possessed no such power.

We thus come to the important and controlling question in this case, whether the insured is to be charged with notice of the contents of the written application, which he executed, making the same a part of the contract of insurance.

The legal presumption is, in the absence of fraud, that the insured read or had read to him the application before signing it. This being so, he was advised that the policy could not issue or take effect until the first premium was paid thereon in full.

The legal effect is that the insured covenanted with the company directly, and not through its agent, that the policy was not to be binding upon the company until the first premium was paid in full.

Is this contract to be enforced as clearly written, or is it to be ignored for the reason that men enter into contracts without reading them and assume that a vague and unproven custom exists permitting a local agent to give life and validity to the policy without reference to the terms of the contract of insurance?

The question may be put in another form. Can an insurance company enter into a contract with a person applying for insurance, which can so fix the precise conditions under which the policy shall issue, that the agent, in the absence of express authority, cannot abrogate it?

It would seem that the mere statement of the foregoing questions would compel an answer in favor of the company without argument.

An insurance company is entitled to have its contract enforced by the courts as written, unless, as has been stated in many cases, to strictly construe it as against the insured would work a fraud upon him. As already pointed out, this might be the case in reference to the payment of the initial premium, where the only provisions in regard to the same are contained in the policy.

It cannot be said in this case, in the teeth of the express covenant of the insured contained in his application and carried into the policy with due reference to the same, that he would be subjected to a fraud if the waiver of the agent, made without authority, is held not to abrogate the contract between him and the company, of which he is chargeable with full notice.

We are of opinion that it was error for the learned trial judge to instruct the jury that if they found that at the interview between the agents and the insured the general agent delivered the policy to the insured and agreed with him that the time of the payment of the first premium should be extended, and that in the meantime the policy should be in force, that their verdict should be for the plaintiff.

The order and judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

HAIGHT, J. (dissenting). This action was brought to recover the amount of an insurance policy issued upon the life of Robert J. Russell, and payable to the plaintiff, his widow.

Charles H. Tennant was the general agent of the defendant, in charge of its office in Syracuse, and James F. O'Donnell was the sub-agent and a solicitor of insurance under him. Russell had made application for insurance through O'Donnell, and the policy had been issued by the company and sent to its general agent, Tennant. On the 6th day of January, 1900, Tennant and O'Donnell called upon Russell at his residence with the policy of insurance, and asked Russell if he wanted to pay the premium. He was not ready to pay at that time, and Tennant then said to him that he could have thirty days

in which to make the payment. He thereupon handed Russell the policy and gave him a receipt for the first payment, saying to him that the policy was in force from that time on. He then suggested that Russell better let O'Donnell hold the receipt until he paid the premium. Thereupon Russell handed the receipt to O'Donnell and then they went away. On the 10th day of January thereafter Russell was killed by the explosion of an engine in the Rapid Transit power house. Both O'Donnell and Tennant deny the statement of the plaintiff, to the effect that Tennant stated to Russell at the time he delivered the policy to him that it should be in force from that date on, thus raising a question of fact between the parties which was submitted to the jury, who found a verdict in favor of the plaintiff, thus settling that question of fact in accordance with the testimony of the plaintiff.

It is now contended that there can be no recovery upon this policy, for the reason that the application of insurance contained a clause to the effect that the policy shall not take effect until the same shall be issued and delivered by the company, and the first premium paid thereon in full. Upon the back of the policy there was printed the following: " No agent has power on behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or making or receiving any representation or information. These powers can be exercised only by the president, one of the vice-presidents or the secretary, and will not be delegated."

I had supposed that a general agent of an insurance company could waive a condition of the policy requiring prepayment of premium, in order to make the policy binding, and that this proposition was settled so firmly by judicial authority as to be beyond question. In *Sheldon* v. *Atlantic Fire and Marine Insurance Company* (26 N. Y. 460) it was held that a general agent of the insurer may waive a condition in the policy that no insurance should be considered as binding until actual payment of the premium. Emott, J., in delivering the

opinion of the court, says with reference thereto : " There can be no dispute that Lewis could waive the actual prepayment of the premium. He was a general agent of this company, and whatever may have been his secret instructions the insurer had a right to rely upon his act. His principals were bound as well by a waiver on his part of the condition of prepayment of the premium as by his contracts of insurance." In *Wood* v. *Poughkeepsie Mutual Insurance Company* (32 N. Y. 619) PORTER, J., says : " Boggs was a general agent of the company. If he had waived the condition of prepayment the insurers would have been bound by his act, though it was in violation of their private instructions. The law would have implied such waiver if the policy had been delivered by the agent without requiring payment of the premium, and had been accepted by the plaintiff as a complete and executed contract. The company would have been held to its engagement, and the assured would have been liable for the premium, notwithstanding the acknowledgment of payment on the face of the paper." In *Boehen* v. *Williamsburgh City Insurance Company* (35 N. Y. 131) it was held that " Although, by the printed terms of the policy, it is stated that no policy will be considered binding until the premium is paid, yet the agent may waive such condition and give short credit. The delivery of a policy without requiring payment raises a presumption that a short credit is intended." (See, also, *McNeilly* v. *Continental Life Insurance Co.*, 66 N. Y. 23 ; *Marcus* v. *St. Louis Mutual Life Ins. Co.*, 68 N. Y. 625 ; *Palmer* v. *Phœnix Mutual Life Ins. Co.*, 84 N. Y. 63–70 ; *Ruggles* v. *American Central Ins. Co.*, 114 N. Y. 415 ; May on Ins. [4th ed.] vol. 2, sec. 360b ; 19 Am. & Eng. Ency. of Law [2d ed.] p. 55.)

But it is now claimed that a way has been discovered by which the settled law upon this subject can be evaded and annulled, and that is by printing upon the back of the policy issued a clause which seemingly deprives their agents of any power to give any information, make any representation, or to extend the time for the payment of the premium for a

single day.   It is not pretended that this condition printed
upon the back of the policy was ever called to the attention
of Russell, or that he knew of its existence in his lifetime.   It
did not appear upon his application, and nothing was said
with reference to it at the time of the interview in which the
policy was delivered to him by the general agent of the com-
pany.   He had no opportunity to read over and post himself
with reference to the printed conditions upon the back of the
policy until the agents had taken their departure.   He does
not, however, appear to have read it then, for immediately
after the agents had left he handed it over to his wife, the
plaintiff in this action, who since that time appears to have
had the custody thereof.

It has been intimated that there was some merit in the
defense to this action ; that the jurors should have believed
the agents instead of the plaintiff.   But this question has, as
I have already stated, been settled by the jury, and, I have no
doubt, upon ample evidence to sustain the verdict.   Indeed,
the testimony of the agents is inconsistent with their conceded
acts.   They admit that the general agent, at the time and
place stated by the plaintiff, delivered the policy to Russell
and left it with him, and that he gave him time within which
to make the payment.   If the policy was not to be in force in
the meantime, why was it delivered ?   Had it been held by
the general agent until the money was paid, no one could have
been deceived with reference to its force and effect.   The
very fact of its delivery, under the authorities to which we
have referred, carries the presumption that it was in effect,
and that any provision in the policy to the contrary was
deemed waived.   There is but one answer to the action of the
agents, and that is that which the law implies.   By the deliv-
ery of the policy to Russell and the inducing of him to accept
it, he thereby became bound to pay the premium from that
day, together with the interest accruing thereon, and the same
could be enforced in a court of law.   Whereas, by holding the
policy for one month without delivering it to the insured,
would prevent its earning any premium during that month

which lawfully could be collected, and the company would thus be deprived of one-third of its first quarterly premium.

What, then, is the position of this defendant as disclosed by the record? It maintains an office in the city of Syracuse, presided over by a general agent of the company, who has the supervision of numerous sub-agents, but these agents cannot give any information, make any representation or promise on behalf of the company. The only power, apparently, given to the general agent is to deliver policies and collect premiums due thereon, but he has no power to extend the time for the payment or to make delivery of policies until the premiums are *actually paid in cash.* And yet this agent, having the power to deliver policies, delivered this policy without the payment of the premium, in violation of his instructions, arranging with the insured to give him thirty days within which to pay the premium, and to induce him to accept the policy representing to him that it was then in force. At the same time this agent knew that the policy contained the provisions alluded to, and that it would not be in force or binding upon the company, although Russell by his acceptance had become bound to pay the premium.

To sustain the company's position in this transaction is, to my mind, the permitting of it to practice a fraud, through its general agent, upon the insured. The general agent was acting within the scope of his employment in delivering the policy. Russell, in the absence of knowledge as to the instructions given the agent in the manual, and of the condition to which we have referred, had the right to rely and act upon the statements of the agents, made at the time of the delivery of the policy; and he having accepted the same, the company became bound by the contract. To hold otherwise would permit the company to deceive its customers by the false and fraudulent representations of its general agent, and at the same time avoid responsibility therefor. Parties to contracts, including insurance companies, cannot be permitted to avail themselves of their own fraud, in order to escape liability for

13

failure to perform their contracts. (Broom's Legal Maxims, 320.)

The case of *Stewart* v. *Union Mutual Life Insurance Company* (155 N. Y. 257), while distinguishable from the case under consideration as to the facts, is not, in my judgment, distinguishable as to the questions of law involved.

Under the view taken by me of this case, the exceptions appearing upon the record present no error calling for a reversal.

The judgment should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN and MARTIN, JJ., concur with BARTLETT, J.; HAIGHT, J., reads dissenting opinion; VANN, J., not voting.

Order and judgment reversed, etc