<hr/>

(161 App. Div. 59)

### BENARD et al. v. PROTECTED HOME CIRCLE.

(Supreme Court, Appellate Division, Fourth Department.   March 4, 1914.)

1. INSURANCE (§ 788*)—LIFE INSURANCE—"SUICIDE."
   "Suicide," as used in a suicide clause in a benefit certificate, implies a mental appreciation of the act of self-killing, which an insane person could not have.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1956; Dec. Dig. § 788.*

   For other definitions, see Words and Phrases, vol. 7, pp. 6764–6769; vol. 8, p. 7809.]

2. INSURANCE (§ 817*)—MUTUAL BENEFIT INSURANCE—BURDEN OF PROOF—SUICIDE.
   The defense of self-destruction is an affirmative defense the burden of proving which rests on the association in an action on a mutual benefit certificate, and hence it must show that the poison taken by insured was not taken by mistake.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1999–2002; Dec. Dig. § 817.*]

3. INSURANCE (§ 788*)—MUTUAL BENEFIT INSURANCE—SUICIDE CLAUSE.
   A clause of a mutual benefit certificate exempting from liability for death from suicide would not be applicable if insured took poison through mistake.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1956; Dec. Dig. § 788.*]

4. EVIDENCE (§ 63*)—PRESUMPTIONS—SANITY.
   Sanity is presumed; that being the normal human condition.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 83; Dec. Dig. § 63.*]

5. EVIDENCE (§ 60*)—PRESUMPTIONS—SUICIDE.
   Since suicide is unlawful and immoral, it is presumed that insured's death was not caused by suicide.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 81; Dec. Dig. § 60.*]

6. INSURANCE (§ 825*)—MUTUAL BENEFIT INSURANCE—ACTIONS—JURY QUESTION—CAUSE OF DEATH.
   Evidence in an action on a mutual benefit certificate *held* to make it a jury question whether insured took poison by mistake or for suicidal purpose.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2009; Dec. Dig. § 825.*]

<hr/>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Cattaraugus County.

Action by Martha Benard and another against the Protected Home Circle. From a judgment for defendant, plaintiffs appeal. Reversed, and new trial ordered.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Henry Donnelly, of Olean, for appellants.

George A. Larkin, of Olean, for respondent.

LAMBERT, J.   This is an action to recover upon a contract of life insurance issued by the respondent, upon the life of George Benard. The issuing of the certificate, the payment of all premiums due, and the death of the insured are all conceded. The defense is based upon the conceded fact that Benard died from carbolic acid administered by his own hand. In this connection, there is invoked a suicide clause in both the certificate of insurance and in the by-laws of the respondent. Both these clauses are set forth, in full, in the answer.

Plaintiffs do not attempt to combat the proof that the insured met his death from self-administered carbolic acid, and that conclusion is required from the evidence. But to escape the consequences of the provisions in avoidance of the policy plaintiffs advance two arguments.

[1] It is first urged that the defense in avoidance is affirmative in character and that its burden rests upon the respondent; that respondent, in its answer, has urged the sole defense of suicide; that the act of suicide, under our decisions, implies and requires that the suicide be a sane person, capable of appreciating the character and consequences of his acts; and that the evidence in this case presents a question of fact as to whether or not the insured was possessed of that degree of mentality. It is true that our Court of Appeals has held that an insane man cannot commit suicide. That suicide implies a mental appreciation of the act, such as an insane man could not have. Meachem v. Association, 120 N. Y. 242, 24 N. E. 283; Shipman v. Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347. But this entire argument rests upon the narrow construction of the answer, as raising solely the defense of suicide, in its strict sense. I cannot accede to that construction of this pleading. The answer pleads the self-destruction clauses of both the by-laws and the certificate. Such clauses, as will be seen from an examination of them, are sufficiently broad to void this policy regardless of the mental condition of the insured, and it therefore seems to me that, in asserting "suicide" as a defense, the defendant should be deemed to have used that term in its colloquial sense as embracing all acts of self-destruction, regardless of the mental condition of the subject.

[2, 3] The second argument of the appellant is somewhat different and has more merit. It must be conceded that the defense of self-destruction is affirmative, and that the burden of sustaining it rests upon the defendant. In establishing that defense it was incumbent upon the defendant to negative the possibility of this acid having been taken by mistake; for, if taken through error, then clearly the clause of the policy, in avoidance, is not applicable. It is urged by appellant that

defendant has not met that burden, so conclusively as to resolve that question into one of law, rather than one of fact. The effect of the holding of the trial court, in directing a verdict for the plaintiff for the amount, only, of premiums paid, is that the evidence adduced, upon this affirmative defense, by both sides, permits but the single inference that the acid was taken intentionally. If such court was right in this conclusion, then such question was properly handled as one of law. But, if contrary inferences are permissible from such evidence, then such evidence should have been submitted to the jury.

Briefly stated, the evidence pertinent is as follows: The insured was a young man about 38 years of age. He was a barber by occupation, owning his own shop. For some years his health had been poor, requiring him at various times to seek employment taking him into the outdoor air. He suffered great pain at intervals. His eyesight was poor; the sight of one eye being almost entirely gone. He was under a physician's care and customarily carried upon his person bottles of remedies, at least one of which was a four-ounce bottle. On the day of his death and about two hours previously thereto, he purchased of a druggist a four-ounce bottle of carbolic acid. He had made similar purchases before. That particular kind of acid was in use by him for sterilizing his barber tools. Just before his death he went into a saloon and with a pencil wrote something upon a piece of paper. He then called for a glass of beer and took it to a table in the place. Soon afterwards he called for another, saying that he had broken the first. Although no broken glass was to be seen, the bartender gave him another, which he took into the water-closet. He was next seen coming out of the closet, when he stated that he had killed himself. Of several persons, he requested a physician. One was summoned, but insured soon died. His lips, mouth, throat, and stomach were found to be burned with carbolic acid. The bottle of acid was found upon him, about one-third emptied. Upon his person, a letter was found addressed to his wife (presumably the one he had just been writing). That letter is not produced, but two witnesses give its contents in general terms. They say it asked his wife to forgive him and that she take care of the children. One witness says it contained the statement that he could stand it no longer and that it expressed love for his wife. It further appears that previously the insured had had issued to him a revolver permit; that his wife, one of the plaintiffs, observed him standing in front of a looking glass with the revolver in his hand; and that she thereupon requested the cancellation of the permit and secured possession of the revolver.

By reason of his frequent use of carbolic acid, in his business, this particular purchase proves litle in aid of defendant. It is as compatible with mistake as with the intentional taking thereof. The circumstances of the taking of the acid (except the writing of the letter) are also easily to be reconciled with mistake, and perhaps his requests for a physician even tend to support the theory of mistake more strongly than that of intention. The letter affords the greatest argument in favor of the defendant. But the contents of that letter are hazily given, and, from the portions recollected, it may be that a contrary

inference is drawn than would be present if the missive itself was before the jury, complete. Defendant finds further assistance in the previous occurrences with the revolver, urging a tendency to take his own life to be shown therefrom. It does not appear, however, that he ever made any actual attempt so to do, and the evidence is not of strong probative value, in and of itself.

On the other hand, the ill health and suffering of the insured, his poor eyesight, and his custom of carrying his physician's remedies in bottles of the size and character of the one containing this acid, are all circumstances that tend to weaken the theory of intention and to support that of mistake. There is no evidence of any preannouncement of intention to destroy himself, nor is there any circumstance shown which differentiates his life on that day from what it had been repeatedly and continuously theretofore.

[4, 5] Added to these circumstances is the legal presumption, first, of sanity; and, next, against suicide. Sanity being the normal condition of mankind, its existence is presumed until the contrary is shown. Suicide being unlawful and immoral, the presumption obtains in favor of mistake rather than suicide and is conclusive until the contrary is shown.

[6] I am of the opinion that the defendant did not make out its defense of intentional self-destruction with such clarity as permitted the court to dispose of the matter as a question of law. It seems to me that a jury might find from all the circumstances that this acid was taken by mistake and in the belief that it was medicine proper to take. If I am right in this, then a jury question was presented and a reversal is required.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.