(92 Misc. Rep. 216)

KLEIN v. SUPREME COUNCIL OF LOYAL ASS'N.

(Supreme Court, Appellate Term, First Department. November 3, 1915.)

1. INSURANCE ⊝⟷724—FRATERNAL INSURANCE—ADMISSION OF MEMBERS—
WAIVER OF CONDITIONS.
The defendant beneficial association's constitution and by-laws provided that "application shall not be received from a barkeeper or other person who at any time sells or serves intoxicating liquors to be drunk on the premises," and that "no act of a subordinate council or of any member thereof in the admission of any person to membership in this council * * * shall be recognized by or be deemed binding upon the supreme council, * * * unless such act shall be in accordance with the provisions contained in the laws and constitutions prescribed by the supreme council." A local president of the order solicited plaintiff's intestate, a barkeeper, to drop other insurance and join the defendant association. He knew of plaintiff's intestate's employment, and told him he would "fix" it by putting him in as a lunch man. Plaintiff and her intestate knew of the condition prohibiting the admission of barkeepers. Held, that there was no waiver of the provision of the constitution and by-laws; the local president not being authorized to make such waiver, and the plaintiff and her intestate having colluded with the president to defraud the association.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1837, 1866–1868; Dec. Dig. ⊝⟷724.]

2. INSURANCE ⊂⇒694—FRATERNAL INSURANCE—ADMISSION OF MEMBERS—REASONABLE EXCLUSION.

Since intemperate habits may seriously affect the risk in life insurance, it is a reasonable rule for a beneficial association to exclude barkeepers from membership, since they have the opportunity and temptation for excessive drinking.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1834, 1835; Dec. Dig. ⊂⇒694.]

3. INSURANCE ⊂⇒724—FRATERNAL INSURANCE—ACTIONS—PLEADING—ESTOPPEL.

No estoppel to plead breach of warranties in an application for insurance in a beneficial association can arise from acceptance of dues, in the absence of knowledge of the association of the breach, which cannot be imputed to it through knowledge of its local president, where plaintiff and her intestate knowingly attempted to defraud the association.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1837, 1866–1868; Dec. Dig. ⊂⇒724.]

4. INSURANCE ⊂⇒723—FRATERNAL INSURANCE—WARRANTIES—CONDITIONS PRECEDENT.

The truthfulness of a material warranty in an insurance policy in a fraternal beneficial association is a condition precedent to the attaching of the risk.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. ⊂⇒723.]

5. INSURANCE ⊂⇒819—ACTIONS—EVIDENCE—SUFFICIENCY.

Evidence in an action on an insurance policy in a fraternal beneficial association *held* to show such fraud on the part of plaintiff and her intestate as to prevent recovery, where defendant tendered back the premiums paid and asserted its position promptly on learning of the fraud.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. ⊂⇒819.]

Bijur, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Margaret Klein against the Supreme Council of the Loyal Association. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued October term, 1915, before BIJUR, PAGE, and SHEARN, JJ.

Jas B. Kilsheimer of New York City, for appellant.
Morris E. Gossett, of New York City, for respondent.

SHEARN, J. This action was brought to recover $1,000, the amount for which the defendant had issued its benefit certificate upon the life of George Klein, the husband of the plaintiff. The defendant set up as affirmative defenses (1) misrepresentation and fraud by Klein in procuring membership; and (2) suicide or self-destruction.

As to the first defense, the constitution and laws of the defendant provided that:

"Application shall not be received from a barkeeper or other person who at any time sells or serves intoxicating liquors to be drunk on the premises."

It is undisputed that when the deceased applied for membership he was, and at all times thereafter continued to be, a bartender and liquor saloon proprietor.

As to the second defense, the constitution and laws of the defendant provided that:

"No benefit shall be paid upon the death of a member who shall die by suicide, or self-destruction, committed by the member whether sane or insane."

The body of the deceased was found by a policeman lying in a vacant lot about 10 miles from the home of deceased; there were green and yellow stains on his lips and chin; alongside the body was found a blue bottle, on which was marked "Carbolic Acid"; the coroner's inquest showed that deceased had died of carbolic acid poisoning; and the bottle found alongside the body was one taken by the deceased from his home. On the issue of suicide, it is difficult to see how the jury arrived at its conclusion. When the verdict was rendered, the learned trial judge, who subsequently denied the motion to set aside the verdict, stated:

"It seems to me that the verdict can only be the result of probably unintentional sympathy and prejudice against the defendant and in favor of the plaintiff."

Nevertheless, while the decision in Bennard v. Protective Home Circle, 161 App. Div. 59, 146 N. Y. Supp. 232, stands, it would seem unwarrantable to interfere with the jury's verdict.

[1, 2] Numerous and interesting questions are very ably discussed in the briefs of counsel, but the only one that it is necessary to consider is the one decisive of the appeal, namely, the alleged waiver by the defendant of the concededly false representation made by the deceased in his application. The defendant·organization is composed of a number of local councils, as is usual with these benefit societies. The president or head of the local was called the "councilor." The councilor of local No. 17, who for more than eight years had visited the deceased's saloon and bought drinks from him, persuaded the deceased to drop other insurance and join the defendant order. Plaintiff admitted that the question of the deceased's ineligibility by reason of his business was brought up and discussed before the application was signed. She testified:

"Q. Did Mr. Miller [the councilor] speak to your husband regarding the saloon business? A. Yes. Q. What did he say? A. He said, 'I will fix it up all right.' He said, 'I will put you in as a lunchroom.' Q. Did he tell him to say that? A. Yes; he told him to put it as a lunch man."

Intemperate habits may seriously affect the risk in life insurance. In view of the opportunity for and temptation to excessive drinking in the case of a saloon keeper or bartender, it was a reasonable rule and sound policy for this order to adopt excluding saloon keepers and bartenders from membership. It was decided in Dwight v. Germania Life Ins. Co., 103 N. Y. 341, 8 N. E. 654, 57 Am. Rep. 729, that a false statement that the applicant for insurance had not been engaged in or connected with the manufacture or sale of intoxicating

liquors was a breach of warranty and forfeited the policy. It is contended, however, in the case at bar that the defendant waived the forfeiture by the acts of the councilor or head of the local, who was a party to the misrepresentation, notwithstanding the following provision of the constitution and laws of the defendant, which were part of the contract sued upon, and which were introduced in evidence by the plaintiff:

"No act of a subordinate council or of any member thereof in the admission of any person to membership in this council, and no act of any member for his own or his beneficiary's advantage, shall be recognized by or be deemed binding upon the supreme council, or as entitling the person admitted or the beneficiary named, to any benefits from this association, unless such acts shall be in accordance with the provisions contained in the laws and constitutions prescribed by the supreme council."

This contention completely loses sight of the principle upon which the cases rest which apply the rule of waiver.

"The rule which charges a principal with the knowledge of his agent is for the protection of innocent third persons. If a person colludes with an agent to cheat the principal, the latter is not responsible for the act or knowledge of the agent." May on Insurance, § 133B.

It was said in Wood v. American Fire Ins. Co., 149 N. Y. 382, 386, 44 N. E. 80, 81 (52 Am. St. Rep. 733):

"To take the benefit of a contract with full knowledge of all the facts and attempt afterwards to defeat it, when called upon to perform, by asserting conditions relating to those facts would be to claim that no contract was made and thus operate as a fraud upon the other party."

Here the fraud perpetrated is upon the insurer, and not upon the insured. Here the beneficiary of the deception practiced upon the insurer, and with actual knowledge of the cheat, is asserting the waiver. To apply, for the benefit of a beneficiary of a fraud with knowledge of the deception, a waiver based upon the necessity and justice of protecting innocent persons against fraud, would be very illogical and quite absurd. Cases such as Wood v. American Fire Ins. Co., supra, Skinner v. Norman, 165 N. Y. 565, 59 N. E. 309, 80 Am. St. Rep. 776, and Stewart v. Union M. L. I. Co., 155 N. Y. 257, 49 N. E. 876, 42 L. R. A. 147, do not seem to me to be at all in point. If the councilor had told the deceased that he could get the deceased admitted to membership in spite of his disqualification, and if the deceased had signed a truthful application, and on that truthful application had been admitted by the local, the situation would be quite different, and it might well be held that the requirement as to his occupation had been waived. But, instead, the deceased, knowing that he was ineligible, colluded with the agent to cheat and deceive the defendant.

No such element existed in any of the above-cited cases. In the Wood Case, not only was there no deception, and no possible claim of fraud, but it was not definitely known until the case was decided by the Court of Appeals what legal effect the transfer of the interest of one of the members of a partnership holding title to real estate had upon the unconditional and sole ownership of the firm. It was finally

held that the title to the real property, which was the subject of the insurance, was in the partnership firm, and was not affected by the assignment of one of the members. An unsuccessful attempt of an insurance company to forfeit the policy because of this ineffective assignment, which was fully known to the agent, can scarcely be considered an authority for holding that in the case of a deliberate deception, practiced by the insured with the connivance of the defendant's agent, the insurer is bound on the theory of waiver. In the Skinner Case, there was no deception or fraud attempted to be practiced upon the insurance company. When the agent of the insurance company asked whether there were any claims against the steamboat that was to be insured, a representative of the plaintiff disclaimed any knowledge of claims against the property, but stated that, if there were any, the defendant's agent could ascertain them by inquiry of the plaintiff, which the agent voluntarily agreed to do, but failed to do. Such a case clearly does not bear upon the situation with which we are dealing. Similarly with the Stewart Case, where the agent took a note for the first premium. Not only was there no question of deception, but the company had accepted the note, as the court found might be inferred from the notice through its local cashier to the policy holder, stating when his note "given in settlement of premium due on the policy" "will be due and payable."

[3] It is also contended that, if there was no waiver, there was at least an estoppel on the part of the defendant, based upon the receipt of dues by the defendant from the deceased with the knowledge of its agent that the deceased was disqualified from membership. It is, of course, true that the forfeiture could be waived if the defendant had knowledge of the deceased's ineligibility and of the false representation; but it is equally true that, in order to work an estoppel, proof of knowledge was essential. The claim is that the knowledge of the agent is to be imputed to the defendant, and that the defendant is to be bound thereby. But this rule has never been applied where the agent and the insured were acting in collusion to deceive the insurer. The estoppel is created for the benefit of innocent persons, not for those guilty of working a fraud upon the insurer. Indeed, it was distinctly held in Levell v. Royal Arcanum, 9 Misc. Rep. 257, 30 N. Y. Supp. 205, that the knowledge of a committee of three members of a subordinate lodge cannot be imputed to and charged upon the grand lodge. That was a case where the committee had been deceived. Certainly, therefore, such knowledge would not be imputed where a councilor of the subordinate lodge, whose knowledge is sought to be imputed to the grand lodge, was an active participant in the fraud. See Hartman v. National Council (Or.) 147 Pac. 931, and Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330.

Counsel cites Sergent v. Liverpool & L. Ins. Co., 155 N. Y. 349, 49 N. E. 935, in which it was held that a fire insurance company, which has issued a policy providing that the insured shall file proofs of loss within 60 days, and that no officer, agent, or other representative of the company shall have the power to waive any condition, except by indorsement on the agreement, may by conduct estop itself from en-

forcing such provision against one who has acted in reliance upon such conduct.

[4] It is well established that the truth of a warranty is a condition precedent to the attaching of the risk. In the case at bar, the deceased warranted the truthfulness of his statements. These representations were material to the risk, and, since they were untrue, the risk never attached. There is a plain distinction between waiving the effect of a false representation, in consequence of which no valid contract was ever made, and waiving a formality in connection with the collection of a loss after the liability has become fixed.

[5] The deceased had no right to membership; his certificate was obtained through a fraud to which he was a party with full knowledge; the plaintiff herself also knew of the deception practiced; the defendant never waived the fraud, nor had any knowldege thereof until after the death of the plaintiff's husband, when it promptly asserted its position and tendered the premiums paid; accordingly, therefore, upon the proof presented there can be no recovery.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.

PAGE, J., concurs.

BIJUR, J.  I dissent.  I am unable to distinguish this case from Wood v. Am. Ins. Co., 149 N. Y. 382, 44 N. E. 80, 52 Am. St. Rep. 733, Skinner v. Norman, 165 N. Y. 565, 59 N. E. 309, 80 Am. St. Rep. 776, and Stewart v. Union Met. L. I. Co., 155 N. Y. 257, 49 N. E. 876, 42 L. R. A. 147, which hold in substance that the breach of a condition in a policy of insurance may, at the inception of the policy, be waived by the general agent, who delivers the same with knowledge of the breach of the condition, even though the policy contain a provision that no such waiver may be made by the agent.

The adherence of our courts to this doctrine, notwithstanding the contrary attitude of the Supreme Court of the United States in Northern Assurance Co. v. Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, and the apparently inconsistent decision of Russell v. Pru. Ins. Co., 176 N. Y. 178, 68 N. E. 252, 98 Am. St. Rep. 656, is pointed out in the opinion in the recent case of McClelland v. Mutual Life Ins. Co., 151 App. Div. 264, 269, 270, 135 N. Y. Supp. 735.  I fail also to find any distinction in this respect between a breach of a condition and breach of a warranty of fact, which, under the terms of the policy, the statement of the assured in the case at bar undoubtedly was.

Nor do I think that the application of the rule is destroyed by calling this breach of warranty a fraud.  I am not sure that on the whole the transaction presented those elements upon which a finding of fraud may be predicated.  But, assuming that question to be presented, it was submitted to the jury, and its determination must be taken as having been adverse to the appellant in that regard.  I think the finding has ample support in the testimony of the plaintiff, to the effect that defendant's representative persuaded the plaintiff to give up life insurance which he carried in an insurance company, and to

take out instead a larger policy with the defendant, advancing a number of arguments to strengthen the inducement so to do; and although it is true that plaintiff signed the application, misstating his occupation, defendant's representative said to him:

"I will fix it up all right, I will put you in as a lunchroom."

Under these circumstances, I think that, if a finding of fraud were to be made, it might be justified, were plaintiff's claim to be defeated; but it would be rather the defendant that would, under such circumstances, be taking advantage of the fraud, which, indeed, was the precise application of the language quoted in the majority opinion from the Wood Case, supra.

The judgment should, in my opinion, be affirmed.