FREDA ABBOTT, as Administratrix, etc., of SAMUEL ABBOTT, Deceased, Respondent, *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.

Fourth Department, January 5, 1939.

*Nicholas J. Weldgen*, for the appellant.

*M. Maurice Chacchia*, for the respondent.

LEWIS, J.   Upon this appeal the defendant resists the payment of a judgment which the plaintiff has recovered upon six weekly-premium industrial life insurance policies issued upon the life of plaintiff's husband who was concededly a non-insurable risk. The plaintiff has thus far succeeded in her claim that, under circumstances which attended the issuance of the policies, knowledge by the defendant's agents that her husband was not then insurable was imputed to the defendant as principal, thereby making applicable the rule of *Bible* v. *John Hancock Mutual Life Ins. Co.* (256 N. Y. 458).   In our review of the record however, we do not reach that question because of an evidentiary ruling which we believe was erroneous and requires a new trial.

The plaintiff's husband died August 24, 1935.   Since 1931 he had been afflicted with chronic myocarditis which had its origin in an accidental heart strain incurred in industrial employment. During four years prior to his death, while the chronic heart disorder prevailed, he was confined to his bed a considerable portion of the time.   Meanwhile, on March 4, 1935 — less than six months prior to his death — four of the six policies with which we are now concerned were issued upon his life and were delivered by the defendant's agent Dillon, to whom the plaintiff and the assured had previously paid premiums upon other policies issued by the defendant.

Dillon had known prior to 1935 of the assured's illness.   He had visited him at a hospital following the industrial accident

which had caused the heart strain. He knew that there was pending in 1935 a compensation claim made by the assured for permanent disability. He had informed the assured in 1933, when the latter had considered the purchase of more life insurance, that he would be unable to pass a medical examination. It also appeared that in that same year of 1933, when an effort was made by the assured to reduce some of his policies to cash, he had consulted Dillon and one Guinan — the latter being the assistant superintendent in charge of the defendant's local office, who assisted defendant's agents with their selling problems and himself took applications for new insurance. These two agents then advised the assured against reducing the number of his policies, " because he [decedent] could not pass the doctor's examination, he had heart trouble." It also appears that Guinan had talked to the plaintiff and her husband concerning the latter's compensation claim for permanent disability and on several occasions he had asked her concerning her husband's health with special reference to the heart condition.

In the latter part of February, 1935, Dillon, accompanied by another of defendant's agents, went to the home of the assured where they proposed a new form of insurance upon his life. The new contract was described as one which was being issued by the defendant in connection with an " anniversary " and having as a new and special feature that no medical examination was required. The assured was told that insurance in the amount of $1,500 was issuable under such a policy but that as he already had insurance in the amount of $500 he would not be entitled to more than $1,000 without medical examination. During this conversation and in the presence of the assured the plaintiff inquired of Dillon how it could be that the defendant company was willing to insure her husband at that time in 1935 after he had been told by Dillon in 1933 that he was not an insurable risk. Dillon's explanation was that the company was proposing in 1935 a different type of policy which required no doctor's examination.

That conference in February, 1935, was productive of four written applications for insurance which are important to our present inquiry. Each was signed by the assured in the plaintiff's presence and upon them the defendant issued four policies which were delivered March 4, 1935, by Dillon, who thereafter collected the premiums. On July 1, 1935, Dillon again called upon the plaintiff at her request and at a time when her home was threatened with foreclosure. She was in need of funds. He advised her to " cash in " some of her husband's older policies and in their place to have him apply for new ones. This was done and on

July 1, 1935, the fifth policy was issued. Thereafter, on August 12, 1935, twelve days before her husband's death, the last or sixth policy of those now before us was issued.

There was proof by the plaintiff from which a jury might have found that on the dates when the six policies were issued by the defendant and delivered, its agents Dillon and Guinan had knowledge of the assured's impaired health. That knowledge, it was claimed, was imputed to the defendant as insurer.' To offset that type of proof the defendant offered, and the court in the first instance received in evidence a clause or notice which appeared in each of the six applications signed by the assured upon which the defendant had issued the six policies here in question. Thereafter defendant's counsel was permitted to read to the jury that clause or notice: " I [the applicant] also understand and agree that no agent has power in behalf of the company to make or modify this application for insurance, or to bind the company by making any promise, or by making or receiving any representation or information."

At a later point, however, counsel for the plaintiff moved to strike from the record the above quoted clause in the applications and the court granted the motion basing the ruling upon the fact that the applications in which the notice appeared had not been affixed to the policies and upon the authority of the *Bible* case (*supra*).

Despite this ruling, by which the defendant was prevented from showing the notice which it had given to the assured that the authority of its agents with whom he was dealing was limited, and despite the fact that by signing each application he had already agreed that he understood a limitation upon the agent's power existed, the court charged the jury in part: " Did they [the assured and the plaintiff] know or should they have known with the exercise of reasonable care that these agents could not waive or bind the company by changing or altering the provisions of the policies? If they did know that there can be no recovery. The general rule relating to knowledge of the agent being imputed to the principal was never intended as a shield for unfair dealing; *so that is an additional question of fact for you gentlemen to decide.*"

The jury was thus called upon to determine as a question of fact whether the plaintiff and the assured knew or should have known that the authority of defendant's agents was limited. The same question was again emphasized as one of fact when, in ruling upon a subsequent request to charge, the court said: " I  *  *  * leave it to the jury to say as a matter of fact whether the insured and his wife had notice that the agents had no authority to waive the provisions of the policies."

It is our belief that prejudice resulted to the defendant's rights from the circumstance that when this question of fact was submitted to the jury for its consideration and decision the defendant already had been denied the right to prove the notice of its agents' limited authority, which notice it had given the assured in writing as a basis for any insurance contract which might follow. In other words, the court had thus withdrawn from the jury's consideration, the precise proof, offered by the defendant, to meet the vital question of fact which was finally presented for decision.

An application for insurance standing alone is not a contract. (*Whipple* v. *Prudential Ins. Co.*, 222 N. Y. 39, 42, 43.) In the case at hand each of the six policies issued by the defendant contained the statement: " This policy contains the entire contract between the parties hereto." It would, therefore, seem that any proof, *extraneous to the policies and antedating* them, was competent which bore upon the question of fact submitted to the jury whether plaintiff and her husband had knowledge of the agents' limited authority.

It has been held that the limitation which an insurer may place upon an agent's authority, viz., that information received by him should not bind the company, is a valid one. (*Axelroad* v. *Metropolitan Life Ins. Co.*, 267 N. Y. 437, 446, 447.) And more recently it has been ruled that " where the company gives to an assured notice of a limitation upon the authority of an agent, the assured can hold the company upon an agreement made by the agent in disregard of such limitations only where it is shown that the company has removed the limitations." (*Drennan* v. *Sun Indemnity Co.*, 271 N. Y. 182, 186.)

At the time the defendant offered in evidence the six applications for insurance signed by the assured, there was affirmative proof that he had signed the applications and that he could read. Upon this proof the defendant was entitled to invoke the legal presumption that, in the absence of fraud, the assured had read the entire application before he signed it, including the notice offered in evidence in this case by the defendant. (*Russell* v. *Prudential Ins. Co.*, 176 N. Y. 178, 188; *Drilling* v. *New York Life Ins. Co.*, 234 id. 234, 241; *Metzger* v. *Ætna Insurance Co.*, 227 id. 411, 416; *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519.)

The proffered evidence, therefore, became competent upon the question of knowledge by the assured of the limitation placed by the defendant upon its agents' authority unless, as the respondent contends and the trial court has ruled, it was made incompetent by section 58 of the Insurance Law (added by Laws of 1906, chap.

326). As to the effect of that statute it has recently been said: " Prior to the enactment of section 58 of the Insurance Law (Cons. Laws, ch. 28), a policy might, by stipulation or reference therein, make a part of itself statements of the assured which were not embodied in the policy and such material statements were warranties the falsity of which avoided the policy. The insured, as a part of his contract, did not have a copy of such statements. He could not, by reading his policy, know what the statements were. He had no opportunity to correct any error in the statements. By the enactment of section 58 the Legislature intended to and did change the situation by providing that the policy should contain the entire contract and that nothing could be incorporated therein by reference. Section 58 provides: ' Any waiver of the provisions of this section shall be void.' After the enactment of section 58 the defense that the insured made false statements inducing the issuance of the policy ceased to constitute a valid defense unless such statements were made a part of the policy as provided in the section. The decisions previously made, holding such defense to be valid, no longer represented the law of the State. By many decisions the law has been definitely settled to the effect that false material statements made to induce a company to issue its policy, whether made orally or in writing, no longer constitute a defense unless such statements are attached to or indorsed upon the policy. Not constituting a defense, no evidence can be received of such material false statements." (*Lampke* v. *Metropolitan Life Ins. Co.*, 279 N. Y. 157, at p. 162.)

We recognize in the above quotation a clear statement of the purposes which section 58 was designed to accomplish and the legal consequences which follow its enactment. But as we view the present case the provisions of section 58 do not touch our problem. We find nothing in that statute or the decisions which have interpreted its effect which validates the ruling herein which rejected as evidence the notice of the limited authority of defendant's agents as contained in the assured's applications for insurance. Concededly these applications were never indorsed upon or attached to the policies when issued; nor were they incorporated in the contract by reference as required by section 58 if they were to become a part of the contract. On the contrary, as already pointed out, each of the six contracts of insurance expressly stated that the policy itself contained the entire contract between the parties.

The clause of the applications which has been rejected by the trial court was offered by the defendant solely to prove the notice which it had given to the assured of its agents' limited authority. It was not offered to prove " false statements [by the assured]

inducing the issuance of the policy " (*Lampke* v. *Metropolitan Life Ins. Co.*, *supra*), to which alone the provisions of section 58 seem to be directed.   It is our view that by offering this evidence the defendant endeavored, without success, to supply in this case the very element of proof which Chief Judge CARDOZO was careful to point out as lacking in *Bible* v. *John Hancock Mutual Life Ins. Co.* (*supra*, p. 462), viz., a " *warning, extrinsic to the policy, of a limitation on the apparent authority proper to an agent.*"   (Cf. *Bonacci* v. *Prudential Insurance Co.*, 242 App. Div. 475.)

We, therefore, conclude that neither the provisions of section 58 of the Insurance Law nor the rule of the *Bible* case (*supra*) is controlling upon the question which this appeal presents.

The judgment and order from which appeal is taken should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur, except SEARS, P. J., who dissents and votes for affirmance on the authority of *Archer* v. *Equitable Life Assurance Society* (218 N. Y. 18).   Present — SEARS, P. J., CROSBY, LEWIS, TAYLOR and DOWLING, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.