# Charleston.

EAGAN *v.* ÆTNA FIRE AND MARINE INSURANCE COMPANY.

(Absent, JOHNSON, JUDGE).

Decided May 2, 1877.

1. A provision in a policy of insurance against fire, declaring the policy void unless the premium is actually paid, is waived by the delivery of the policy without requiring the prepayment of the premium.

2. The courts will enforce the provision in a policy of insurance against fire, that if the building insured stands on leased ground, it must be so represented to the company, and so expressed in the policy, otherwise the policy should be. void, but the benefit of such a provision is waived by an adjustment of the loss made by the company with a full knowledge of all the facts. And, therefore, to an action of *assumpsit* based on the adjustment, a plea of the breach of such a condition ought not to be received.

*Supersedeas* to a judgment of the circuit court of Kanawha county, rendered on the 6th day of June, 1876, in a suit at law, pending then in said court, wherein David Eagan, was plaintiff, and the Ætna Fire and Marine Insurance Company of Wheeling, was defendant.

GREEN PRESIDENT, who delivered the opinion of the Court, sufficiently states the case.

Hon. Joseph Smith, Judge of the seventh judicial circuit, presided below.

*Wm. H. Hogeman,* for plaintiff in error and defendant below.

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

*Wm. A. Quarrier, C. E. Doddridge, Smith and Knight,* for defendant in error and plaintiff below.

GREEN, PRESIDENT, delivered the opinion of the Court.

This is an action of *assumpsit*, brought by David Eagan *v.* The Ætna Fire and Marine Insurance Company, of Wheeling, in July, 1874, upon an alleged adjustment of the damages to be paid, resulting from a fire on the 19th day of January, 1874, which destroyed a certain building insured by the defendant against fire for one year, in a policy of insurance issued by said company, on October 6, 1873. The policy contained the same provisions that are set forth in the policies in the cases of *Quarrier v. The Peabody Insurance Company* and *Quarrier v. The Ætna Fire and Marine Insurance Company, of Wheeling,* decided at the present term, and reported *infra.* There are in the policy two provisions which give rise to the controversy in this case, one is: " If the building insured stand on leased ground, it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy shall be void." In this case the building stood on leased ground, and it was not, when the policy issued, so represented to the defendant. The policy set out that in consideration of $60, the defendant insured the plaintiff. In point of fact, the premium was not paid when the policy ot insurance issued, but a note was given in the manner hereinafter mentioned, which included this premium, and which was not paid till after the fire happened, when the amount of the premium was offered the defendant and it refused to receive it.

Upon the return of the summons, the defendant at rules, put in a plea to the jurisdiction an exact copy of the plea to jurisdiction filed in said cases decided at this term and reported *infra.* The court on motion of the plaintiff, struck out this plea, and an exception was filed to this action of the court. The court in this did not

err, as will appear by the opinion of the Court in said
cases decided at this term.   The declaration in this case
differed materially from the declaration in those cases, it
was the same, except that the adjustment instead of be-
ing set out in the very faulty manner in which it was set
out in those cases, was stated thus:

"That when said fire happened, due notice thereof
having been sent the defendant, the said defendant waived
all other conditions in the schedule or other part of
said policy, and sent promptly two agents on the ground,
one Rodgers and one Bishop, by and through whom the
loss and damage of the plaintiff occasioned by the said
fire, were settled and adjusted at the sum of $1,500, on
the 9th day of February, 1874, all of which the said de-
fendant afterwards, to-wit: on the said 9th day of Feb-
ruary, 1874, had due notice.

"In consideration whereof, the said defendant after-
wards, to-wit: on the day and year last named, under-
took and faithfully promised the plaintiff to pay him the
said sum of $1,500 on demand."

This count, while in many respects, informal, has in
it no substantial defect for which a demurrer to it could
be sustained this sufficiently appears from the opinion of
this Court in the said cases decided at this term and re-
ported *infra*. . The alligation, of the performance by
the defendant of all his obligations for reasons which
will hereafter be given, was mere surplussage upon which
no issue could be taken.

The defendant offered two special pleas. The first one
set out the provision in the policy above quoted, and
alleged that at the date of the policy, and until the fire,
the building insured stood upon leased ground of which
fact the defendant was wholly ignorant.   And that the
plaintiff did not represent to the defendant that the
ground on which the building stood was leased, and did
not cause the same to be expressed in the written part
of the contract.   The second special plea was that when
said policy was executed, the plaintiff had promised and
74

1877.
January Term.

Eagan
v
Ætna Fire and
Marine Insur-
ance Company

agreed to pay to the defendant the sum of $60, the payment whereof was the consideration for which said policy was issued, and that the plaintiff, notwithstanding his said promise, did not before the fire, or at any time since, pay the said sum of $60 to the defendant. The first of these pleas would have shown a good defense to the first count in the declaration had it been based on the policy itself, and not on the adjustment; the second of these pleas would not have presented a good defense, even if the first count had been based on the policy itself, but neither of them presented any defense to an action such as this was, based not on the policy, but on an adjustment. The reasons for these conclusions will be apparent, when I consider, as I shall do presently, this case on its merits, as shown by the evidence. These two pleas were, therefore, properly rejected by the court. The defendant then put in the plea of *non-assumpsit*, and issue was joined thereon. And the jury found for the plaintiff, and assessed his damages at $1,687.50, subject to the opinion of the court on a demurrer to evidence, which was filed by the defendant. The defendant moved the court to set aside the verdict, on the ground that the damages were excessive and not justified by the evidence set out in the demurrer to evidence. Upon the demurrer to the evidence, the court held that the evidence was sufficient to sustain the issue on the part of the plaintiff, and overruled the defendant's motion for a new trial, and entered up a judgment for the plaintiff for $1,687.50, with interest thereon from June 6, 1876, the day of the rendition of the verdict, and his costs, to which the defendant objected. And from which a writ of error and *supersedeas* has been awarded it.

The defendant insists that even if the evidence did show that the parties had adjusted the damages to which the plaintiff was entitled by reason of said fire, that the defendant is not bound by said adjustment; because the evidence shows that there was no consideration to support such adjustment, as the policy which was the basis

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

of the settlement, was void and of no effect, the evidence showing that the building insured was on ground not owned by the defendant, the lease having about seven years to run from the date of the policy. The evidence establishes these facts, and also that at the time of the alleged adjustment the supposed agents of the defendant engaged in making the adjustment, knew these facts. As stated before, the building was simply described in the policy as belonging to the plaintiff, but it was not, when the policy was issued, represented to the defendant that the building stood on leased ground, nor was it so expressed in the written part of the policy, as was required by the above cited provision in the policy, upon the penalty of rendering the policy void. The first question is, under these circumstances, did these facts render the policy void? This depends simply upon the question, will the courts enforce such a provision in the policy? I can see no good reason why such a provision in the policy should not be enforced. It is very obvious why it was inserted. The interest of the assured in using care to prevent the destruction of the building by fire, would obviously be greater if he owned the ground on which the building stood, as well as the building itself, than if he owned the building only, and had a lease for a short time on the ground. For in such case he might have to pull down or remove the building from the ground in a short time, and might have but a small interest in its preservation under such circumstances. This provision in the policy appears, therefore, reasonable, and it having been inserted, it became the duty of the defendant to represent the fact that the building was on leased ground to the defendant, that it might be expressed in the written part of the policy. In the case of *Kibbe, et al. v. Hamilton Mutual Insurance Company*, 11 Gray, 167, a similar provision in a policy was enforced. It is true this insurance was in a mutual insurance company, who had a lien on the ground on which buildings stood which were insured, as well as on

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company
the buildings. And the court say that the provision should be enforced, because the defendant's lien was by the plaintiff's not owning the ground, rendered of but little value. But even where there is no lien, as in the case now before us, the defendant is much interested in the extent of the assured interest in the property, as a trifling interest in it only, might make the assured careless in its preservation. It is insisted, too, that the policy was void for another reason, the premium was neither paid or offered to the defendant till after the destruction of the building by fire. The facts appearing in evidence on this point, were that J. D. Moore, an insurance agent, living in Charleston, but who was not acting as agent for the defendant, wrote to Rodgers, the secretary of the Peabody company, of Wheeling, to get this policy for plaintiff, and at Rodgers' instance it was issued by the defendant and sent to the plaintiff though Rodgers and Moore. The defendant paid Moore for negotiating the policy. The premium was not paid at the time, but afterwards a note was taken by Moore, of Rodgers, for premiums he owed, which note was payable January 1, 1874. The note was for $246.30, and included other liabilities of plaintiff, and was drawn payable to Moore; it was not paid at maturity, nor till shortly after the fire, which occurred some twenty days after this note became due. Moore's fee being first deducted, he sent balance of the $60, the premium on this policy, to Rodgers, and he tendered it to the defendant, who refused to receive it. The policy on its face recites that it was issued in consideration of the receipt of $60.

There is a provision in the policy that " the company shall not be liable by virture of this policy, until the premium therefor be actually paid." But compliance with this provision of the policy was waived by the delivery of the policy. This position, though it has not always been admitted to be law, is nevertheless sound, and is sustained by the highest authorities. See *Wood v. Poughkeepsie Insurance Company*, 32 N. Y., 619; *Shel-*

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

ton v. *The Atlantic Fire Insurance Company*, 26 N. Y., 460; *Boehen v. Williamsburg Insurance Company*, 35 N. Y., 131; *Miller v. Life Insurance Company*, 12 Wall., 303.

The next inquiry is whether the policy being void by reason of the building insured being upon leased ground, does this render void the alleged adjustment of the damages to be paid to the plaintiff by the defendant, the agents of the defendant having full knowledge of all the facts when they made the adjustment? In other words, does their ignorance of the law as to the rights and responsibilities of the parties render the adjustment made by them void? I am of opinion that it does not. If a party, through ignorance of fact, has either paid money or promised to pay money for which he was not liable under the supposition that he was liable, he may recover it back in the one case, or refuse to fulfill the promise in the other. *Goodall v. Dolley*, 1 T. R., 712; *Williams v. Bartholomew*, 1 Bos. and Pull., 327; *Donaldson v. Means*, 4 Dall., 109; *Crain v. Caldwell*, 8 John. R., 384; *Garland v. Salem Bank*, 9 Mass., 408. But ignorance of law, the facts being known, furnished no ground for the recovery of money which has been voluntarily paid, or for avoiding a promise to pay. *Stevens v. Lynch*, 12 East., 38; *Lundie v. Robertson*, 7 East., 231; *Bilbie v. Lumley, et al.*, 2 East., 469; *Lowry v. Bourdieu*, Doug., 468; *Duryee v. Dennison*, 5 Johns., 248. These principles were approved and applied to a case of an adjustment made by an insurance company, in *Dow v. Smith*, 1 Caine's (N. Y.) R., p. 32. We see no reason why they should not be as applicable to an adjustment made by an insurance company with full knowledge of the facts as to a promise by an individual to pay any debt for which he supposes himself responsible in law, he knowing when he makes the promise of all the facts. This being the law, it was clearly surplusage in the declaration for the plaintiff to allege performance of all the obligations imposed upon him by the policy; he had a right to sue upon the adjustment, whether he had performed the obligations

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

imposed upon him or not, and this being so, the special pleas alleging that he had not performed these obligations, offered issues upon immaterial matters and were properly rejected.

The only inquiry remaining is, was an adjustment such as is alleged, made with the plaintiff, by the defendant; and this sub-divides itself into two questions: Was any adjustment made in point of fact; and if so, were those who assumed to make it on the part of the defendants, authorized to do so? In considering these questions, we must bear in mind that the case is submitted on a demurrer to evidence by the defendant, and that the rule governing the court in such case is: "the demurrant must be considered as admitting all that can reasonably be inferred by a jury from the evidence given by the other party and as waiving all the evidence on his part, which contradicts that offered by the other party, *or the credit of which is impeached,* and all inferences from his own evidence, which do not necesarily flow from it." *Muhleman v. National Insurance Company,* 6 W. Va., 508. Applying this rule, we think that the court properly held that Rodgers and Bishop, assuming to act for the defendant, did, with full knowledge of all the facts, make an adjustment with the plaintiff of the amount he was entitled to demand of the defendant. The facts on this part of the case are these, as proven by J. D. Moore, a witness for plaintiff: First, his connection with the issuing of this policy and the collection of the premium as before stated; then, that shortly after the fire, Rodgers and Bishop came to Charleston, representing themselves as agents of all, except one, of the Wheeling companies, to adjust losses occasioned by the fire which happened, January 19, 1874. The only Wheeling company they did not represent was the Nail City company, and the witness saw a telegram from that company authorizing them to act for it also, they having failed to see the authorities of that company before they left Wheeling. Rodgers was the

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

assistant secretary of the Peabody company, and was the person who at witness' instance got this policy of the defendant, and sent it to witness for the plaintiff. Bishop was the general agent of the Franklin company, also a Wheeling company. In making adjustments of losses they professed to represent all Wheeling companies, including the defendant. They remained in Charleston adjusting these losses about two weeks; occupied the office of the witness; they told witness to charge the Franklin company, with $10 for use of office and the Peabody company $10, and they, the adjusters, would divide it among all the companies when they went to Wheeling. They adjusted about thirty losses. They made up these adjustments in the office of the witness, and, in adjusting, did what all adjusters do, talked with parties, had estimates made, and determined amount of loss. A paper showing these adjustments they left with the witness and took duplicate to Wheeling. This paper, which was produced, so far as the plaintiff's adjustment was concerned, is as follows:

ADJUSTMENT OF LOSSES.

| Date of Policy. | No. of Policy. | Name of Company. | Am't of Policy. | D. Eagan. | |
| --- | --- | --- | --- | --- | --- |
| | | | | Insures. | Pays. |
| October 6, 1873. | 2,601 | Ætna ........ .... | 1,500 | 1,500 | 1,500 |
| Sept. 23, 1873.... | 21,464 | Franklin......... | 1,500 | 1,500 | 1,500 |
| October 6, 1873. | 2,463 | German ......... | 1,500 | 1,500 | 1,500 |
| Sept. 23, 1873.... | 2,376 | Nail City........ | 1,500 | 1,500 | 1,500 |

This paper contained besides these, similar adjustments for thirty-one other losses—to be paid to thirteen other persons, for thirteen different companies. In a few instances the amount to be paid entered under head pays, was left blank as in the case of Quarrier, trustee. The witness proved that this was the ordinary forms of adjustments. He only knew their business in Charleston,

1877,
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

from what they said and what witness saw them do. Witness did not assist in making these adjustments, but did in going to see parties, and in getting persons to make estimates. The property of plaintiff insured was a total loss ; it was insured in other companies as stated in adjustment paper. Estimates were made of plaintiff's loss. The plaintiff proved his total loss to be $9,000. It seems to me upon this evidence on a demurrer to evidence by the defendant, the court had a right to hold that their had been an adjustment of loss of plaintiff, to be paid by the defendant, and that the amount to be so paid was $1,500. It is true, the defendant's witnesses, Rodgers and Bishop, who proved that they helped to make out the proof of loss, which proof is dated January 31, and expressly states that the building was on leased land, they deny having, when in Charleston, any authority of any sort from any companies in Wheeling, excepting their own and the Nail City, who telegraphed to them while in Charleston. They say they had never seen any of the officers of the defendant on the subject, or of any of the other Wheeling companies. And that they in no manner represented the defendant or any other Wheeling company except their own and the Nail City. And they deny that they made any adjustments for any of these other companies or for the defendant, or did anything, but as a matter of accommodation assisted in making the proof of losses. Their testimony, however, is on this demurrer to evidence, of no weight ; it contradicts the testimony of the plaintiff in reference to the actual fact of their making adjustments, and the statements they made in their evidence are not reconcilable with their statements or conduct while in Charleston, and is therefore, on a demurrer to evidence to be entirely discarded. I think, too, as the testimony of Moore, showing the fact that both these parties were residents of Wheeling, and trusted agents of insurance companies there, and that one of them, Rodgers, was the party through whom the policy in this case had been

negotiated with the defendant, that they remained there two weeks; did actually adjust for all the Wheeling companies, and represented themselves as authorized so to do—would have justified on a demurrer to evidence by the defendant, the conclusion drawn, that they were agents of the defendant, authorized to make this adjustment with the plaintiff if there had been no other evidence introduced by the plaintiff, but he introduced the evidence of J. R. Miller, the secretary of the defendant, who says that no authority had been delegated to either Rodgers or Bishop to settle for the defendant any claim under the policy of the plaintiff, or to bind it for any any amount; and that the defendant never did approve of any settlement made by them; that they were sent to Charleston to look after the interest of all the Wheeling companies, and ascertain the liability of each company under the terms of its policy without authority to bind any or either of them; they were also to assist the parties assured in making up proof of losses. This testimony though in the form of a deposition for the defendant, being introduced by the plaintiff, and uncontradicted, is entitled to its full weight, and it seems to me, shows conclusively that Rodgers and Bishop had no authority to adjust with the plaintiff his losses, understanding by adjustment, the fixing of the amount to be paid by the defendant. Their only authority was to ascertain for the information of the defendant, the amount of his liabilities by reason of this fire; and that a jury in the face of this testimony, could not reasonably infer from the fact that these parties had filled up a paper which is the usual form of an adjustment that they had really intended any more than an ascertainment for use of defendant of its losses, or even if they did intend more, the authority to do more could not reasonably be inferred by a jury in opposition to this positive proof to the contrary. The case differs most materially from the case of *Quarrier, trustee v. The Peabody Insurance Company,* and *Quarrier, trustee v. The Ætna Insurance Company,*

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insurance Company

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

decided at this term of the Court, the paper in those cases introduced by the plaintiff, showed on its face that their had been no agreement as to the amount to be paid, that the assured claimed more than twice as much as the adjusters thought these companies bound for, and this court held that in point of fact no adjustment in that case was proven, whereas in this case the paper produced on its face indicates no controversy about what the defendant was bound to pay. This case also differs from the case of *Stolle v. The Ætna Fire Insurance Company*, decided at this term. In that case this Court held that the demurrer to evidence did sufficiently show, not only an adjustment in fact, but authority on the part of Rodgers and Bishop to make the adjustment. The marked difference between that case and this, is that while Miller's positive testimony to the want of authority in Bishop and Rodgers to make an adjustment, controls in this case, it having been introduced by the plaintiff, the same testimony in the Stolle case, was entitled to no weight, for while in this case this witness of the plaintiff's stands unimpeached, in that case he was impeached. A material statement made by him that the defendant was ignorant that there had ever been an assignment to the plaintiff of the policy until after the fire being positively and pointedly contradicted by a witness for plaintiff, that he had long before the fire been introduced to Miller for the express purpose of informing him of this transfer, and asking whether his approval of it was necessary, as the form on the back seemed to indicate, and that Miller had informed him it was unnecessary. This witness, then being a witness for the defendant, the demurrant was impeached directly, and being so impeached on a demurrer to evidence, the court was bound to discard his testimony. In the present case, he is not only uncontradicted, but being introduced by the plaintiff, his evidence is entitled to its full weight, and is sufficient to show that Bishop and Rodgers never had any authority to bind the defendant by any adjustment.

1877.
January Term.

Eagan
v.
Ætna Fire and
Marine Insur-
ance Company

Judges Haymond and Moore are, however, of the opinion that I have given to the deposition of Miller, though introduced by the demurree, more weight than under the law as laid down in the case of *Miller, use, &c. v. Insurance Company,* 8 W. Va., 515, it is entitled to properly. And that the evidence of the plaintiff, as shown by the demurrer to the evidence, is such that this Court would not be justified in pronouncing erroneous the conclusion reached by the circuit judge that the authority of the agents of the defendant, Rodgers and Bishop, to make the adjustment with the plaintiff, which they actually made, ought on a demurrer to the evidence to be regarded as sufficiently shown. They are of opinion that if the case had not been withdrawn from the jury by the demurrer to evidence, and the jury had found a verdict for the plaintiff, that the verdict ought to have stood, and not been set aside because not authorized by the evidence; and this being true, they think under the principles decided in the case cited above, in 8 W. Va., R., this court is not authorized to declare that the judgment of the circuit court rendered in favor of the plaintiff on the demurrer to evidence, is erroneous, but they are of opinion that the same should be affirmed. On all other points stated in this opinion, we all concur.

A majority of the members of the Court being of opinion that there is no error in the judgment of the circuit court, rendered in this case, on the 6th day of June, 1876, it is, therefore, considered that the same be affirmed and that the appellee recover of the appellant his costs expended in this Court, and damages according to law.

JUDGMENT AFFIRMED.