# CHARLESTON.

ZORADA GOODBAR v. WESTERN & SOUTHERN LIFE INSURANCE COMPANY.

Submitted October 4, 1921.    Decided October 11, 1921.

1. INSURANCE—*Insurer, by Unconditional Delivery and Giving Credit for Premium, Waives Policy Provision Against Liability Before Actual Payment.*

    An express provision in a policy of life insurance that the insurer shall not be liable thereon until the premium is actually paid, may be waived by the unconditional delivery of the policy to the insured as a complete and executed contract under an express or implied agreement to give credit for the premium, or for a part thereof, and in such case the insurer is liable in case of the death of the insured before the expiration of the time given for payment.  (p. 225).

2. SAME—*Circumstantial Evidence to Establish Suicide Must Exclude Every Other Reasonable Hypothesis.*

    Where in a suit on a policy of life insurance the defendant relies upon a provision of the policy defeating recovery if the insured dies from suicide, while sane or insane, within

two years from the date of the policy, the evidence to show that the insured's death was suicidal must be clear and satisfactory, and where circumstantial evidence is relied upon for such purpose, such circumstances must establish that death resulted from suicide to the exclusion of every reasonable hypothesis consistent with death from natural causes. (p. 226).

3.  SAME—*Life Policy Held Void for Insured's Misstatement as to Previous Injury.*

A policy of life insurance issued upon an application in which is contained a representation by the insured that he had never had any illness, injury, or disease, will be rendered void upon a showing that the insured, prior to the time of making the application, had suffered an injury resulting in the loss of one of his feet. (p. 227).

4.  SAME—*Life Policy Void for Misrepresentation in Application as to Having Been Refused Insurance.*

A policy of life insurance issued upon an application in which is contained a representation by the insured that he had never applied to a company or agent for insurance without receiving a policy of the exact kind and amount applied for, will be rendered void where it is shown that the insured had in fact applied to other companies for life insurance, and that such other companies had refused to issue the same. (p. 228).

Error to Circuit Court, Cabell County.

Action by Zorada Goodbar against the Western & Southern Life Insurance Company. Judgment for plaintiff, and the defendant brings error.

*Reversed and remanded.*

*Fitzpatrick, Campbell, Brown & Davis,* for plaintiff in error.

*J. H. Strickling* and *Jean F. Smith,* for defendant in error.

RITZ, PRESIDENT:

The plaintiff brought this suit to recover the indemnity provided in a policy of insurance issued by the defendant upon the life of her husband Harry Goodbar. To review a judgment in her favor for the amount of said indemnity this writ of error is prosecuted.

On the first day of December, 1913, according to the plaintiff's contention, and on the first day of January, 1914, ac-

cording to the contention of the defendant, Harry Goodbar applied to an agent of the defendant for a policy of life insurance in the sum of three thousand dollars. This application was in writing, and is introduced in evidence in this case. Upon this application the defendant issued the policy of insurance desired, and sent it to its agent at Huntington, who delivered it to the insured. At the time the application was taken Goodbar paid the sum of five dollars as an advance on the premium charged, which was $58.80. At the time of the delivery of the policy on the 8th of January, 1914, Goodbar was not able to pay the balance of the premium, and the plaintiff states that the agent accepted another payment of two dollars, for which a receipt was given, and Goodbar's note or due bill for $51.80, and delivered the policy unconditionally, while the agent swears that he delivered the policy to Goodbar accepting the two dollars as a conditional payment, with the understanding that the policy was simply delivered for examination, and would be returned unless the full premium was paid within thirty days, and he says that he took a written statement from the insured showing this fact. This writing, however, is not produced, and the defendant shows that it is unable to locate the same if, indeed, it ever existed. On the 9th of January, 1914, Goodbar became very sick from bichloride of mercury poisoning, presumably taken with suicidal intent, and on the 15th of that month he died as a result thereof. At the time the application for insurance was made, and on the same day, Goodbar was taken before the company's local medical examiner, Dr. Shafer, who examined him and submitted his result of the examination to the company with the application for insurance. This same doctor was called to attend Goodbar in his last illness, and discovering while giving this attention that Goodbar only had one foot, and recalling that this did not appear from the medical examination which he submitted, he told Goodbar that he ought to return the policy of insurance, and have the same corrected so as to show the fact in that respect. Prior to this, however, the agent of the company had come to Goodbar's house to secure the return of the policy. Mrs. Goodbar, says that both of these parties

represented that it would not affect the validity of the policy in the least, but that they simply wanted it for the purpose of making it speak the truth. The Goodbars refused to return it to the agent, but they did return it to the doctor, and he sent it to the company with the explanation that the insured had only one foot. It never was returned by the company, but a copy was furnished to the plaintiff, upon which this suit was brought.

The defendant interposed to the declaration four defenses. The first asserted that the insured had committed suicide by taking bichloride of mercury within two years of the date of the issuance of the policy, and that because of a provision in the policy to the effect that in case of the suicide of the insured, while sane or insane, within two years from the date of the issuance of such policy, the limit of recovery would be the amount of the premiums paid, it was only liable for the sum of seven dollars, the amount actually paid by Goodbar as premium. The second defense is that the insured, at the time he applied for said insurance, made an application and appended thereto, over his signature, a statement that the representations made therein were true, and were offered to the company as representations upon which they might rely in issuing the said policy; that among the questions asked him in said application was: "Have you ever had any illness, injury or disease other than stated by you above?" That he had not theretofore indicated that he had had any disease or injury, and that the answer to the question was "No." That in fact and in truth the insured had prior to that time suffered an injury which resulted in the loss of one of his feet, which fact he concealed from the defendant. Third, that he also represented in said written application that he had never applied to a company or agent for insurance without receiving a policy in the exact amount and of the kind applied for, when in fact and in truth within less than one year prior to the issuance of this policy, and the making of this application, he had been rejected and refused insurance by two other companies. Fourth, that the policy provides that it shall continue in force only for the period actually paid for, and that no premium could

be paid for a less period than three months, and that the
policy was simply delivered to Goodbar for examination, and
because of his failure to make the payment of the premium
provided by the terms of the policy prior to his death his
beneficiary was not entitled to recover thereon.   The repli-
cation to these defenses denies that the insured committed
suicide; asserts that while the premium had not been paid,
this requirement had been waived by the company's agent
by accepting the due bill or note from the insured for such
premium, and unconditionally delivering the policy; and
that the representations by the insured that he had received
no injury prior to the application for insurance, and had
never been refused insurance by any other company, were in
effect waived by the defendant because it, through its agent,
was fully advised of the facts in regard thereto.

As before indicated, the evidence upon the question of de-
livery of the policy and waiver of the payment of the prem-
ium is conflicting.   The agent says that he delivered the
policy for examination upon condition that it would be re-
turned if the premium was not paid within thirty days, and
that at the time he so delivered it Goodbar signed a writing
showing this understanding.   This writing, however, is not
produced.   This agent admits that Mrs. Goodbar was present
at the time of delivery.   She testifies that when the agent
came to deliver the policy he was advised that they did not
have the money to pay the premium at that time; that he
told them that he would deliver the policy and accept a note
or due bill for the balance of the premium, and that this
would put the policy in immediate effect; that he did deliver
the same, and that he was paid two dollars in money and
given a note or due bill by the insured, which note or due bill
was not paid prior to Goodbar's death.   She says that the
insurance company's agent also promised on that occasion to
endorse a note for them for a larger amount than the bal-
ance of the premium, upon which they could secure the money
and pay off this due bill, and that she went to his office a day
or two afterward to get him to endorse this note, but that he
refused to do so.   Upon this showing the jury, under the
instructions of the court, found that the requirement as to

the payment of the premium had been waived by the company. The defendant's counsel do not contend that such a requirement as this could not be waived. That such can be done seems to be well established. 14 R. C. L., title "Insurance" § 362. Nor is it doubted that the testimony of Mrs. Goodbar would constitute a waiver, if true, it being purely a question whether she or the agent correctly reported the facts. The jury's finding is conclusive upon that question.

The next defense relied upon is that of suicide. One of the conditions of the policy is "In case of suicide, while sane or insane, within two years from the date on which this insurance begins, the limit of recovery shall be the amount of premiums paid thereon." Goodbar died within a very few days after the issuance of the policy, the defendant insists that his death was caused by bichloride of mercury poisoning, self administered. That his death resulted from bichloride of mercury poisoning there would seem to be no doubt. Dr. Shafer, who attended him at this time, testifies that this was so, and Dr. Steenbergen, who was called in consultation, is likewise positive that Goodbar's death resulted from bichloride of mercury poisoning, and there is no effort to contradict the testimony of these witnesses, or to account for his death upon any other theory. It is stated by these doctors that when they told Goodbar that he had taken bichloride of mercury he denied it, but they attach no significance to this denial, expressing the view that they expected him to make this answer. There is no direct evidence as to how or by whom this poison was administered to the insured. It is within the realm of possibility that it was taken by mistake, or that it was administered to him by someone else innocently, or with a homicidal intent. There is no attempt to show that he procured the poison at any time previous to his death, or how it came into his possession, if in fact it ever did. The tenacity with which men cling to life is so great that suicide will not be presumed unless the state of facts under which death occurs practically excludes every other reasonable hypothesis, and the court so instructed the jury in this case. There is no indication that Goodbar

was not in his right mind up until the time of his death.     In fact the evidence shows that he was entirely rational, and was suffering from no sort of delusion   or hallucination at any time.     While the evidence tending to show death by suicide was very strong, still when we consider that the poison was never traced into Goodbar's possession, and the possibility that it may have been taken innocently by mistake, or been administered to him by someone else under the belief that it was another substance, it may be that the jury's verdict upon this question can be justified.     *South Atlantic Life Ins. Co.* v. *Hurt's Admrx.,* 115 Va. 398, 79 S. E. 401, and authorities there cited.

In the application for insurance the insured represented that he had never suffered any injury.     It appears from the uncontradicted evidence that the insured at the time had only one foot, and the plaintiff, his wife, testified that the missing foot had been off for twelve or thirteen years. From this it satisfactorily appears that some twelve or thirteen years before the insured had suffered an injury which resulted in the loss of his foot.     This representation is a statement of fact within the knowledge of the insured.     It is in no sense an expression of opinion upon his part.     As we have repeatedly held in cases like this, the company  by asking and demanding answers to certain questions, and the insured, by making answers and asserting their correctness, agree as to their materiality, and make any false statement in regard to a matter within the insured's knowledge ground for vitiating the policy.     Of course, if the answer was such as only called for the opinion of the insured, and he gave an honest opinion, he could not be charged with a false representation.     There is no opinion called for, however, so far as this question is concerned.     It called for a statement from the insured of something that he knew, and his answer is coupled with an assurance upon his part that the defendant could rely upon the truthfulness thereof.     The replication attempts to escape the effect of this false representation by asserting that the defendant, or its agent, knew the facts when the application was given.     It suffices to say that this contention is. supported by no evidence whatever.     On the contrary, it is

shown by the agent that he never saw Goodbar before he came to his office and made application for the insurance, and that he did not know until after the policy was delivered that the insured had only one foot.        The medical examiner states that he had no knowledge of Goodbar's condition; that in examining him for the insurance he did not make such an investigation as would disclose this injury, and only discovered it when he subsequently came to attend him while he was sick in bed suffering from the bichloride of mercury poisoning.

The next ground of defense is that the insured represented that he had never applied for and been refused insurance in any other company.        This representation is likewise one of fact, and is material, and if false will avoid the policy issued upon an application containing it.        25 Cyc. 819; 14 R. C. L., title "Insurance" § 258; Bacon on Life and Accident Insurance, § 293.        The facts proved on this issue are that on the 3rd day of December, 1913, Goodbar made an application for· a policy of three thousand dollars in the Ohio National Life Insurance Company.        This application was in writing and was signed by Goodbar, and is introduced in evidence in this case with the testimony of the medical director of that company, who likewise testifies that on the 27th of December the application was rejected; that the agent who took the application was at once notified of this fact and directed' to return to Goodbar the advance payment of five dollars made by him at the time of taking the application, and take up the receipt given him therefor; that this was done, and the receipt given to Goodbar for the five dollars returned to the home office of the company at Cincinnati on the 31st of December, 1913.        The plaintiff, however, attempts to escape the effect of this refusal by asserting that the application in this case was made on the first day of December, 1913, two days before the application made to the Ohio National Life Ins. Company, and she introduced in evidence a receipt which was given by the agent at the time the application was taken, and which is dated December 1, without indicating any year, and she asserts that this was given to her husband by the agent on the first day of December, 1913.        The application, it is ad-

mitted, was taken at the same time.     It is dated January 1, 1914, and signed by Goodbar.     The medical examination it is shown was made upon the same day, and it is dated January 1, 1914.     The agent who took the application and the physician who made the medical examination, both testify that these dates are correct.     The agent admits that the receipt produced was given by him, but he says that the date December 1 is a mistake, and occurred by his writing the name of the previous month from force of habit.     This explanation is entirely plausible.     Very often those who are in the habit of frequently writing dates, in changing from one month to another, make mistakes like this.     If, however, the plaintiff's contention is correct that the transaction was really had on the first of December, 1913, we are entirely at a loss to understand why the application· signed by Goodbar is dated on the first of January following, and the medical examination likewise bore that date.     It is quite possible that in writing the date on the first day of the month by mistake the name of a preceding month might be used, but it is without the realm of possibility that the name of a succeeding month and a new year would be inserted.     However, this is not so material in this case, as it appears that on the 12th day of June, 1913, the insured made an application in writing to the Conservative Life Insurance Company for a· policy of one thousand dollars on his life.     This application is in writing, and is introduced in evidence with the testimony of the secretary of that company who likewise testifies that the insurance asked for was refused, and this fact communicated to the agent who solicited and secured the application, who in turn testifies that he delivered in person to Goodbar the letter advising him of the refusal of the company to issue the policy long before the application in this case was made. There is no attempt to explain this.     This false representation unexplained was sufficient to defeat plaintiff's recovery.

This disposes of the several defenses relied upon, but inasmuch as the case will have to go back for a new trial, it is necessary for us to pass upon the instructions.     Instruction No. 1 given for the plaintiff told the jury that inasmuch as the defendant relied upon false representations to defeat

recovery, it must appear from the evidence that such representations were made by the insured, Harry Goodbar, wilfully, and with the intent to deceive the insurer, and that such false representations were relied upon by the company; or that the answers to the questions asked were not only false, but that the thing inquired about was peculiarly within the knowledge of the insured; and that if the defendant had failed to establish its defenses of fraudulent representations, or any of them, then the verdict must be for the plaintiff. It was error to give this instruction because it told the jury in the first place that if the defendant failed to establish any of its defenses the verdict must be for the plaintiff, while exactly the reverse of this is true. If the defendant established any one of its defenses it was entitled to a verdict. It is also misleading in that it submits to the jury the question of the intent with which Goodbar made the representations, and tells the jury that he must have made them wilfully, and that they must find that they were relied on. Now the representations relied upon for defense in this case do not call for opinions, and the court should not have submitted the question of the insured's good faith to the jury. These defenses were based upon misrepresentations of facts, of which the insured was bound to have knowledge, and as we have repeatedly held the parties made these questions and answers material by their contract, and if the insured gave false answers to them the policy is vitiated, even though he may have done so with no intention of deceiving, and under the impression that they were not matters of any importance, or even temporarily have forgotten the facts in regard to the transactions inquired about. If it was the purpose of this instruction to submit to the jury the question of the good faith of the insured where a matter of opinion was inquired about, then there was no evidence in the case which justified it. It was, therefore, misleading, and should not have been given. If it was the intention to submit to the jury the question whether these representations were matters of opinion, or whether the answers made thereto were made in good faith, then it was wrong because the questions did not call for any opinion, and as matter of law the good faith of the insured in making

the answers was not material.     *Schwarzbach* v. *Protective Union,* 25 W. Va. 622; *Logan* v. *Assurance Society,* 57 W. Va. 384; *Myers* v. *Life Ins. Co.,* 83 W. Va. 390; *Harris* v. *Ins. Co.,* 86 W. Va. 638.

Instruction No. 2 given on behalf of the plaintiff presented the theory that the defendant might waive the requirement of payment of the premium, and tells the jury that if a due bill or note was accepted and the policy delivered unconditionally this requirement of payment was thereby waived. This instruction, we think, properly propounds the law upon this question.

Instruction No. 3 is on the question of suicide.     It tells the jury that if there is a doubt whether the insured came to his death by suicide or natural causes, and there is no convincing evidence upon the cause of his death, the law presumes that his death was produced by natural causes; that the law requires more than a preponderance of the evidence to establish suicide; that every hypothesis consistent with death from natural causes must be excluded.     This instruction is a fair statement of the law as to the character of proof required to establish death by suicide, and while the defendant assigns as error the action of the court in giving it, no reason is given or argument adduced to support the assignment.

On the part of the defendant the court gave a number of instructions correctly presenting its various defenses.     These instructions, so far as they apply to the false representations made by the plaintiff in his application, are in direct conflict with the plaintiff's instruction No. 1.     We think they very clearly present the correct theory to the jury, and that there was no error in refusing to give other instructions offered by the defendant covering the same ground.     An instruction was, however, offered by the defendant calling for the judgment of the court upon defendant's defenses, and asking the court to tell the jury as matter of law that defendant had made good defense to the suit, and that the jury should so find.     This instruction was refused.     In the view of the case we have above outlined it should have been given.

We will reverse the judgment of the circuit court of Cabell

county, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*