WILLIAM E. MEADOWS *v.* PEOPLES LIFE INSURANCE
COMPANY

(No. 8483)

Submitted February 23, 1937. Decided March 23, 1937.

HATCHER, JUDGE, dissenting.

*Salisbury, Hackney & Lopinsky* and *Lon G. Marks,*
for plaintiff in error.
*D. Boone Dawson,* for defendant in error.

MAXWELL, JUDGE:

This is an action on a two hundred and fifty dollar
industrial life insurance policy issued November 13, 1933,
by Peoples Life Insurance Company, defendant, on the
life of Mae Meadows. The beneficiary under the policy
is the plaintiff, William E. Meadows, husband of the in-
sured. She died December 2, 1933.

The court directed a verdict for the defendant and
entered judgment of *nil capiat* against the plaintiff, and
of this he is here complaining on writ of error.

On the solicitation of an agent of the defendant at the
Meadows home in the City of Charleston, November 1,

1933, Mae Meadows signed applications for insurance on her own life and on the life of each of her four children. The premiums were to be nineteen cents a week on the woman's policy and forty-two cents weekly on the children's policies. The latter policies do not concern us in this controversy.

As to the Mae Meadows policy there is no claim by the plaintiff that any premium subsequent to the first was paid, it being urged that under the four-weeks' grace period provided by the policy, it was in force and binding on the defendant when the insured died.

The sharp controversy of fact which this record presents revolves around the initial weekly premium of nineteen cents on the Mae Meadows policy.

The policy was delivered to the insured at her home twelve days after she had made application therefor. The plaintiff contends and undertook to prove that the policy was delivered to his wife by an agent of the defendant under an arrangement between her and the agent whereby he was to pay the first premium to the company and she was to reimburse him within a few days when her husband should receive his semi-monthly pay. In support of his proposition that there was such extension of credit by the agent to the insured, the plaintiff called as a witness a young woman, living in the Meadows home, who testified that she heard the initial conversation between Mae Meadows and the agent, and that he then told the applicant he would pay the first premium for her and she could repay him.

The defendant's agent and an associate who was with him at the Meadows home testified that the plaintiff's said witness was not present when they had their conversation with Mae Meadows; that a woman (maybe the witness) came into the house after they had concluded their business with Mrs. Meadows and as they were leaving. The company asserts that the agent would have had no right to extend credit even if he had desired to do so, but it says that he did not attempt it. Sustaining the defendant's contention that the agent did not extend credit to Mae Meadows nor promise to pay the initial

premium for her, the two witnesses for the defendant testified that no such undertaking was entered into, and that later, the policy was delivered on condition that she and her husband examine it and determine whether or not she desired to accept the same, and, if she did, she should pay the agent before the policy took effect.

At the conclusion of the introduction of testimony, on agreement of counsel for both parties, before the case was submitted to the jury for general verdict, the court requested the jury to answer the following interrogatory: "Does the jury find from the evidence that credit was extended to Mrs. Mae Meadows by Everett Lee, agent for the defendant for the first week's premium on the policy in issue; or does the jury find that the said Everett Lee delivered said policy to Mrs. Mae Meadows conditionally on the terms that it was not to become effective until she paid the first week's premium on said policy?" Upon deliberation on the question, the jury made this answer: "We, the jury, find from the evidence that credit was extended to Mrs. Mae Meadows by Everett Lee, agent for the defendant, for the first week's premium on the policy in issue."

After the jury had made to the court its answer to the interrogatory, each party moved for a directed verdict. The court overruled the plaintiff's motion, and sustained the defendant's. The jury responded: "We, the jury, at the direction of the Court, find for the defendant."

In the light of the conflicting testimony, we must accept as conclusive the jury's finding that the agent of the company extended credit to the insured for the first week's premium, and that the policy was not delivered to her on the condition that it was not to become effective until she paid the first week's premium.

What was the effect of the extension of such credit? The answer lies in the overshadowing fact that the policy, fully executed, was delivered to the insured by an authorized agent of the defendant and remained in her possession. This was not consistent with the defendant's present contention that the policy was delivered on approval. It tends to open the way to great uncertainty for

an insurance company to take the position that an executed and delivered policy is not binding on the insurer, because of a collateral oral agreement involving a contingency. The mere statement of the proposition carries disfavor thereto.

It may be true, as was testified by the agent in this case, that it is against the rules of the defendant for an agent to extend credit to a policy-holder, but the same agent admitted that occasionally policies are left with insured persons, who are regarded all right, and the unpaid premiums carried for collection. Though such procedure is irregular, the policy-holder or his beneficiary is not the one who should suffer therefrom so long as such practice is not expressly inhibited by the policy and it is possible for an agent to deliver an executed policy and interpose his financial obligation between the insured and the company. When the obligation of the insured is in this manner underwritten for him, he may very well consider that so far as the first premium is concerned, he has complied with the stipulation on the face of the policy requiring premiums to be paid in advance. And then, too, under circumstances like these, such requirement may be deemed waived on the part of the insurer. "An express provision in a policy of life insurance that the insurer shall not be liable thereon until the premium is actually paid, may be waived by the unconditional delivery of the policy to the insured as a complete and executed contract under an express or implied agreement to give credit for the premium, or for a part thereof, and in such case the insurer is liable in case of the death of the insured before the expiration of the time given for payment." *Goodbar* v. *Life Ins. Co.*, 89 W. Va. 221, 108 S. E. 896.

There are many cases along this line. Reference is here made to some of them. Their backgrounds of fact are comparable to the fact-basis of the case at bar, and the general priniciple of law underlying all of them is the same as that which is herein applied.

"Upon the question of law whether or not the taking of a note constitutes a payment, it is well settled by the

weight of authority that an agent of a life company, who is intrusted with the business of closing the contract by delivering the policy, has an implied authority to determine how the premium then due shall be paid, whether in cash, or, as is sometimes done, by giving credit, in which case the agent becomes the creditor of the insured, and the debtor of the insurer. In that event, though the agent should subsequently default, and the premium should never reach the company, the policy would still be binding." *Conservative Life Ins. Co.* v. *Condos*, 24 Ohio App. 504, 157 N. E. 306. Likewise, illustrative of this principle, are the following cases: *Wright* v. *Life Ins. Co.*, 165 S. C. 190, 163 S. E. 133; *National City Bank* v. *Life Ins. Co.*, 332 Mo. 182, 57 S. W. (2d) 1066; *New York Life Ins. Co.* v. *McJunkin*, 227 Ala. 228, 149 So. 663; *Harlow* v. *North American Acc. Ins. Co.*, 162 Wash. 423, 298 P. 724. Consider, also, *Eagan* v. *Fire & Marine Ins. Co.*, 10 W. Va. 583, 588, and *Croft* v. *Fire Ins. Co.*, 40 W. Va. 508, Syl. 6, 21 S. E. 854, 52 Am. St. Rep. 902—fire insurance cases.

Nor is there here involved any violation of the policy's inhibition against alteration of the terms thereof by an agent of the insurer. These restraints, in the very nature of things, are for the purpose of governing conduct after the policy has come into the possession of the insurer. Such was the factual background of the fire insurance case of *Morgan* v. *American Cent. Ins. Co.*, 80 W. Va. 1, 92 S. E. 84, L. R. A. 1917D, 1049. The action was by one who had acquired the policy by assignment before property loss by fire. The assignment had not received the formal written consent of a representative of the insurer as required by the policy, though plaintiff's evidence disclosed that an agent had verbally approved the assignment. Right of recovery by the plaintiff was denied by this court. For general discussion of the proposition that the modern trend is to treat policy restrictions as applying to acts subsequent to delivery of policy, see II Couch on Insurance, sec. 522 (b). Before delivery to him of a policy, an insured stands solely on his application for the insurance, and presumably, is not

advised of the terms of the policy.

In the case at bar, however, if it be considered that the insured must have known of the provision of the policy requiring premiums to be paid in advance, her conduct should be considered as an attempt of compliance with such provision, as to the first premium, by employing the financial resources of the agent to tide her over a lean place in her financial set-up. The agent remained the representative of the company, and, when he delivered the policy, he delivered it for the company. "Any person who shall solicit an application for insurance shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured." Code, 33-7-13.

These considerations lead us to the conclusion that, in the light of the jury's special finding, the trial court was in error in directing a verdict for the defendant. Therefore, we reverse the judgment, set aside the verdict and remand the case to the trial court for further proceedings.

*Reversed; remanded.*

KENNA, PRESIDENT, concurring:

We cannot invoke the provisions of the policy contract as determining what the agent for the life insurance company could and could not do by way of waiving the payment of the first premium for several reasons that seem to me to be quite clear.

In the first place, there is our statute, Code 33-7-13, which provides that any person who shall solicit an application for insurance shall, in any controversy between the company issuing the policy, and the assured or his beneficiary, "be regarded as the agent of the company *and not the agent of the assured.*" (Emphasis supplied.) In construing a similar statute of the State of Iowa which, however, contained the additional language "anything in the application or policy to the contrary notwithstanding," [since the parties cannot contract contrary

to the provisions of the statute, this added provision, it is thought, does not control the question of interpreting the statute. *Atlantic Coast Line Railroad Company* v. *Riverside Mills*, 219 U. S. 186, 31 S. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7] the Supreme Court of the United States in the case of *Continental Life Insurance Company* v. *Chamberlain*, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341, held that the insured had a right to rely upon the assurances of an agent concerning the question of what would be regarded as "other insurance" under the terms of the policy. The headnotes of the case read as follows:

"(1) That a person procuring an application for life insurance in that State became by the force of the statute the agent of the company in that act, and could not be converted into the agent of the assured by any provision in the application;

(2) That, if he filled up the application (which he was not bound to do) or made representations or gave advice as to the character of the answers to be given by the applicant, his acts in these respects were the acts of the insurer;

(3) That a 'provision and requirement' (printed on the back of the policy issued on the application), that none of its terms could be modified or forfeitures waived except by an agreement in writing signed by the president or secretary, 'whose authority for this purpose will not be delegated' did not change the relation established by the statute of Iowa between the solicitor and the insured."

The Supreme Court reached the same conclusion concerning the same statute in the case of *McMaster* v. *New York Life Insurance Company*, 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64. In that case the insured had asked the soliciting agent who delivered the policy to him if the policy would be effective, counting the thirty days of grace, for thirteen months from the date of delivery (December 26, 1893) by reason of the payment of the first year's premium. The agent had agreed with him

that it would be. To the contrary of this understanding, the policy contract was dated December 18, 1893, and expressly provided that the annual premium should be paid on the twelfth of December of each year. The insured died January 18, 1895, which was beyond the grace period of one month after day on which the second annual premium was due (December 12, 1894), but was within thirteen months from the delivery date (December 26, 1893) from which the agent had agreed with the insured that the thirteen months of insurance period would run and also within thirteen months from the date of the policy (December 18, 1893). In spite of the express requirement of the policy contract that an additional annual premium should be paid upon the twelfth day of December, 1894, with one month of grace thereafter, the Supreme Court held that the beneficiary could show by parol that the actual agreement had with the agent was to the contrary and a recovery under the policy was sustained. It is true that the first annual premium had been paid, but it seems to me that the principle declared under the Iowa statute governs the case at bar.

In sustaining the Carmack Amendment to the Interstate Commerce Act and making it control the question of agency between the shipper and the initial carrier notwithstanding stipulations in the contract of carriage represented by the bill of lading to the contrary, the Supreme Court declared that there was no such thing as absolute freedom of contract and sustained the legislative power to regulate contracts which are reasonably calculated to injuriously affect public interests. *Atlantic Coast Line Railroad Company* v. *Riverside Mills*, 219 U. S. 186, 31 S. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7.

So that I do not believe our statute is merely declaratory of common law but am of the opinion that it vitally affects the decision of the question before us. To say that the statute is merely declaratory of common law, it seems to me, leaves the question of agency just where it was before the statute and robs the latter of all force. That was not the legislative intent.

Furthermore, those cases which restrict the power of an agent in accordance with the terms of a written contract do so upon the theory that parol evidence may not be taken to contradict or vary the terms of *a written contract*. They, therefore, presuppose the existence of an effective and subsisting contract in writing. If there has been no actual contract in writing, then there is no basis for invoking the parol evidence rule, so-called. In this case our concern is to determine whether the contract of insurance ever came into existence. If the contract is once established then the parol evidence rule may be invoked, but the contract must become effective first. Until the contract does come into effect its stipulations restricting the power of an agent are not binding upon the parties thereto and the power of the agent can be otherwise arrived at and may be explained by parol evidence. So that when we invoke the stipulations of the policy contract as restricting the power of the agent, we admit that the policy contract has become effective as between the parties. If this policy contract did come into effect as between the parties, then according to its terms it could be lapsed only upon failure to pay four consecutive weeks' premiums. It could not be lapsed for failure to pay the initial premium.

It is argued that the company received nothing at all for its policy and for that reason that the policy contract should not be regarded as in effect. It may be true that the company got nothing *in cash,* but it received and accepted the insured's binding promise to pay. Even under the strict terms of the policy, there is no provision for forfeiture on account of the non-payment of a single premium. Neither is there an express provision in the contract which makes the payment of the first premium a condition precedent to its becoming effective. There is simply the provision that all premiums shall be paid in advance and that upon failure to pay premiums for four consecutive weeks the policy contract shall be forfeited. In other words, the failure to pay in advance does not forfeit the contract unless persisted in for a period of *four* weeks, although the policy provides that *all*

premiums shall be paid in advance.

But let us consider the result to the insured in the event that the theory of the defendant is accepted. The policy contract was left with the insured, fully executed by the counter-signature of the local agent, as was the usual receipt book with these premiums entered in it. It is said that the agent agreed to advance the first week's premium himself and to return and get it from the insured later. The agent testified that he tried several times thereafter to get this premium payment from the insured but could at no time find her. He claims that he left the policy contracts with the insured merely for examination, but this is totally inconsistent with his claim that he was trying to collect the full premiums *from the date of the delivery of the policies*. Of course, the only possible theory upon which the company would be entitled to collect premiums from the date of delivery of the policies would be on the basis that the insurance went into effect *at that time*. But the company now says that although they, through their agent, were trying to collect from this insured premiums covering the period from the date of delivery, the policy contracts did not go into effect at that time, and would only have gone into effect from and after the time that the first premium was actually paid. In other words, if this insured had been a week late in paying the first premium she would not have been insured for the first week, and yet she *would have been paying* for that week's coverage. It seems to me plain that the matter of non-payment is by no means conclusive, because while the company contends that it got nothing from the insured in exchange for its contract, it does so upon a theory which, if applicable, would have required the insured to pay the company for a coverage she did not receive.

I have already pointed out that the terms of the policy of insurance cannot avail for the purpose of preventing that contract from coming into effect as between the parties, and that once in effect there is no forfeiture provision for default in less than four weeks' premiums. I have pointed out furthermore that our statute makes

the soliciting agent the agent of the insurance company in all matters leading up to the effectiveness of the insurance contract, and specifically provides that *the agent shall not* be regarded as the agent of the insured. Were it not for the statute, we would have to determine from all of the circumstances just what the powers of this agent were in the negotiations leading up to the effectiveness of the policy contract. But the very purpose of the statute is to settle the troublesome question of agency, and to prevent imposition upon persons who are not familiar with its intricacies. The modern trend is to throw around contracts of insurance and their negotiation the atmosphere of a public interest. When this agent told Mrs. Meadows that he would advance the first week's premium and that she could pay him later it may be true that the arrangement, in so far as the actual payment is concerned, was a private arrangement between her and him, but if that is so it is likewise true that he was representing to Mrs. Meadows, if not by express language, then certainly by the strongest sort of implication, that that arrangement would be satisfactory to the insurance company. In making this representation he was acting as the agent of the insurance company by virtue of the terms of our statute, whether we would be justified in so holding in the absence of statute or not. His knowledge was the knowledge of the insurance company, and it seems to me that on this basis the acquiescence and approval of the insurance company is inescapable. Mrs. Meadows plainly was expected to pay later the premium for the week immediately following the date of delivery. Unless the company, acting through its agent, intended to take something from her for nothing, the policy must have gone into effect upon delivery. If it did go into effect upon delivery, then there is no theory upon which it can be treated as not in effect at the time of Mrs. Meadows' death, because, as has been pointed out, there is no provision for forfeiture for less than four consecutive weeks' non-payment of premiums.

For the reasons set forth, I think that there is no question but that the judgment should be affirmed.

HATCHER, JUDGE, dissenting:

The insured paid nothing for the policy and the insurer received nothing for it. The policy required the premium to be paid in advance, and denied the agent authority to waive the payment. It therefore seems to me that the contract of insurance was never completed.

The defense is based chiefly upon the following policy provisions: "* * * the weekly premium * * * shall at all times be paid in advance. * * * The terms of this policy cannot be changed or its conditions varied, except by a written agreement, signed by the President or Secretary of the Company. Therefore Agents (which term includes Superintendents and Assistant Superintendents) are not authorized and have no power to make, alter or discharge contracts." If a like agency restriction existed in any of the citations submitted in support of the position of the majority of the court, the restriction is not mentioned. *Goodbar* v. *Ins. Co.*, 89 W. Va. 221, 108 S. E. 896, cited by the majority, specifically states that the defendant therein did not contend its agent could not waive the policy provision requiring payment of the premium before delivery. See pp. 225-6 of 89 W. Va. The citation of *Conservative Life Ins. Co.* v. *Condos*, 24 Ohio App. 504, 157 N. E. 306, by the majority, is particularly inadvertent. There, the insurance company had a special arrangement with its local agent whereby he could deliver a policy and be responsible himself to the company for the first premium whether collected or not. So that was a case of delivery by express authority, untinged by waiver. A fair summation of the holding of all the majority citations is that payment of the first premium being for insurer's benefit may be waived by "one having authority" to do so, and that waiver by such an one may be implied from unconditional delivery of the policy. Not a single citation holds that a valid waiver may be made by one to whom authority is denied by the policy, or that his delivery of the policy binds the insurer. Consequently, I cannot agree that the citations are fairly comparable to the case at bar or that the principles they apply are applicable here. I contend for a recognition

of what we said in *Kincaid* v. *Equitable Life Assurance Society*, 116 W. Va. 672, 183 S. E. 40, 41, to-wit: "An insurance contract is to be construed according to its own terms. Such contracts vary; and judicial construction thereof must vary accordingly."

I submit deferentially that the reasons given by the majority for brushing aside the policy provisions are not well considered. The broadside that such provisions "in the very nature of things are for the purpose of governing conduct after the policy has come into the possession of the insured" is a random volley, because after the insured herein received the policy, she did not govern herself accordingly, and see that the agent, as her representative, paid the premium for her. The so-called "modern trend" as adopted by this court more than a generation ago, in *Medley* v. *German Alliance Ins. Co.*, 55 W. Va. 342, 47 S. E. 101, 2 Ann. Cas. 99, does not warrant the categorical statement in the majority opinion. Neither is the rule which produced the ·trend an arbitrary one. The rule was designed to do justice in cases of misplaced confidence on the part of the prospect and an ill-gotten premium on the part of the insurer. In other words, the rule would preclude the insurer from accepting a premium and at the same time, nullifying the policy. The justification of the rule is well stated in *Wood* v. *American Ins. Co.*, 149 N. Y. 382, 44 N: E. 80, 81, 52 Am. St. Rep. 733, listed by Couch as a *trend* case. "It is so obviously just that a party to a written contract should be precluded from defeating it by asserting conditions and stipulations contained in it which would prevent its inception, and which he knew, at the time he delivered it and accepted the benefits were contravened by the actual facts, that any statement of the reasons upon which the rule rests is no longer necessary. * * * To take the benefit of a contract, with full knowledge of all the facts, and attempt to defeat it, when called upon to perform, by asserting conditions relating to those facts, would be to claim that no contract was made, and thus operate as a fraud upon the party." Where are benefits accepted by the insurer in the case at

bar, I ask? Few, if any, cases in the trend actually go further than our *Medley* case, which held that restrictive conditions in a policy should not apply to inceptive representations between the agent and the prospect which the latter did not know and had no cause to expect would be inhibited by the policy. The core of that opinion, page 352, shows, however, that the rule applies (only) "when it appears that the agent has delivered it (the policy) *and received the premium* with full knowledge of the situation." In the case at bar, the agent neither received the premium nor made any inceptive representations inconsistent with the policy provisions. The prospect was not ignorant of the provision requiring a cash payment, as evidenced by her arrangement, *prior to delivery*, that the agent should personally pay the premium for her. Thus the rule to prevent an insurer from rendering nothing for something received has been misapplied by the majority to force the insurer to render something for nothing received.

Code 33-7-13, is not alchemic. I recognize that the state may regulate or forbid any contract which contravenes public policy. *Atlantic Coast Line Rr. Co.* v. *Riverside Mills*, 219 U. S. 186, 202, 31 S. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7. But the authorities have not perverted that power to bind an insurer by acts beyond the scope of its agent's authority. Statutes similar to ours are said not to change the common law. *Wood* v. *Fire Ins. Co.*, 126 Mass. 316, 319; *Davis Lumber Co.* v. *Hartford Ins. Co.*, 95 Wis. 226, 70 N. W. 84, 86, 37 L. R. A. 131. Both of those decisions concur that "The statute relating to agents of insurance companies does not change the rule of the common law regulating the power of agents to bind their principals. * * * The statute cannot be construed so as to prevent the person who is agent for the insurer for some purposes, by virtue of the statute, from being the agent for the insured for other purposes. He may well be agent for each in matters which do not conflict." The instant policy, while forbidding waiver of its provisions by an agent, does not inhibit him from paying the premium himself and personally

crediting the insured. Consequently, there was no conflict between the agent's duty under the policy to the insurer and his duty under his alleged promise to the insured, and the statute does not apply.

If conditional delivery of a policy "tends to open the way to great uncertainty," that tendency must be slight, for the habit of delivering policies on approval, particularly fire insurance policies, is constant and lawful. *Hartford Fire Ins. Co.* v. *Wilson*, 187 U. S. 467, 474, 23 S. Ct. 189, 47 L. Ed. 261. Besides, there is no evidence that delivery of the instant policy produced any uncertainty in the mind of the insured. While she had no means available for the premium, she understood clearly that the delivery called for a cash payment which she undertook to have the agent personally make for her. Occasional credit to others, extended by the agent, not shown to have been reported to the defendant, should not bind it in this instance. An occasional act no more makes a custom, binding at law, than an occasional swallow makes a spring.

Irrespective of the facts, in *Morgan* v. *American Cent. Ins. Co.*, 80 W. Va. 1, 92 S. E. 84, L. R. A. 1917D, 1049, here is what the court said: "The provision in the policy, prescribing the form of waiver of any of its conditions, is a reasonable one, and relates to a matter about which the parties had a right to contract. We cannot say the condition is immaterial, for it was no doubt inserted to avoid the uncertainty of parol evidence. To hold that the agent could violate such an express provision of the policy would be to enlarge his powers beyond those conferred by his principal in writing. * * * Before defendant will be estopped to rely upon the non-waiver provision of the contract it must have been guilty of some fraud, or done something whereby plaintiff was misled to her prejudice. Nothing of the kind appears in the record. *Plaintiff was bound to know the restriction in the policy upon the power of the agent*". Accord: *Shamblen* v. *Modern Woodmen*, 105 W. Va. 252, 258, 142 S. E. 447; *Northern Assurance Co.* v. *Building Ass'n.*, 183 U. S. 309, 361, 22 S. Ct. 133, 46 L. Ed. 213.

I have taken it to be unassailable law that an insurance company could, with "entire propriety", write into a policy such provisions as it deemed proper to safeguard itself, and in the absence of conduct misleading the insured, the courts would enforce the policy as written. *Morgan* v. *American Cent. Ins. Co., supra; Russell* v. *Prudential Ins. Co.,* 176 N. Y. 178, 68 N. E. 252; *Smith* v. *Niagara Fire Ins. Co.,* 60 Vt. 682, 694, 15 A. 353, 1 L. R. A. 216, 6 Am. St. Rep. 144; *Iannerelli* v. *Kansas City Ins. Co.,* 114 W. Va. 88, 171 S. E. 748. In *Russell* v. *Prudential, supra,* a restriction similar to the instant one was upheld, and delivery of the policy on credit even by a general agent of the insurer was declared "ineffective". Accord: Couch, Cyc. of Ins., sec. 522 (a) ; *Lasch* v. *New York Life Ins. Co.,* 92 Misc. 190, 155 N. Y. S. 255; *Penn. Ins. Co.* v. *Blount,* 33 Ga. App. 642, 127 S. E. 892; *Etenburn* v. *Metropolitan Life Ins. Co.,* 118 Okla. 55, 246 P. 383; *Pottsville Ins. Co.* v. *Minnequa Springs Impr. Co.,* 100 Pa. 137; *Wilkins* v. *State Ins. Co.,* 43 Minn. 177, 45 N. W. 1. The prospect's written application herein forewarned her of policy provisions. They are plain and she is charged with having read and understood them. As was said in *Lasch* v. *Ins. Co., supra,* 256, the legal effect of those provisions was that to bind the insurer, the insured must covenant with its president or secretary and not with its local agent. The insurer did all that should be expected to protect both itself and the insured from a personal promise of its agent. It was not informed of his alleged promise to the insured; and it did nothing and permitted nothing done upon which, in my opinion, ratification or estoppel can be based. Anomalous indeed seems a holding, which in the absence of fraud, awards a recovery to one upon an instrument whose plain terms deny him recovery. *Catoir* v. *American Life Ins. & Trust Co.,* 33 N. J. L. 487.

## ADDENDUM

HATCHER, JUDGE, dissenting:

Examination of all the *trend* cases cited in notes to Couch, Cyc. of Ins., sec. 522-b, shows that a few citations

420

are not in point; a few have agency restrictions materially different from the instant policy; and that all the remainder are cases where the premiums (consideration) had actually been received by the insurance company. Many of these cases refer to *Wood* v. *Insurance Company* (N. Y.), quoted above; and all are founded upon the idea advanced in the *Wood* case, that it is unfair for the insurer to accept money for a self-invalidating policy. Since that did not occur in the case at bar, deferentially, the trend cases are not relevant.

In the concurring opinion of Kenna, President, *Continental Insurance Company* v. *Chamberlain*, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341, is relied upon strongly for the construction he gives to Code 33-7-13. An Iowa statute similar to ours was under consideration in that case. The opinion shows that many insurance companies had provided in their applications or their policies that the person procuring the application was to be regarded as the agent of the assured, and that the purpose of the statute was to nullify such unjustifiable provisions. The opinion goes no further than to uphold the statute as against those provisions. See p. 310. The title of our statute is "An Act defining the status of persons soliciting * * * insurance." Acts 1907, ch. 53. It would seem from the title that the purpose of our statute was the same as that of the Iowa statute. At any rate, the purpose is to define a status and not to enlarge the status as defined. I concede readily that a person "who shall solicit an application for insurance" is by force of the statute the company's agent "and that his acts *within the limits of his agency* are the acts of the company." But I find no warrant under the statute for making acts beyond the authority of a soliciting agent the acts of the insurer. *Mallen* v. *Ass'n.*, 168 Mo. App. 503, 153 S. W. 1065.